CASE 24.—ACTION BY DUQUESNE DISTRIBUTING CO.
AGAINST JOSEPH GREENBAUM AND ANOTHER
FOR SLANDER.—October 29; 1909.

## Duquesne Distributing Co. v. Greenbaum

Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

THOS. R. GORDON, Judge.

From a judgment of dismissal on demurrer to the petition the plaintiff appeals.—Affirmed.

1.  Libel and Slander—Actions—Parties.—Slander can only be committed by an individual, and two or more persons cannot jointly utter the same words, but each speaks for himself, and. is liable for his own language, and two or more persons cannot be jointly sued.

2.  Partnership—Liability for Torts—Slander.—Though partners are not jointly liable, and cannot be sued as a firm for slanderous words spoken by one of them unless by the direction or authority or approval of the others, they are liable as a firm for slander committed by a servant, whom they have directed or authorized to speak the words for them, or where, with knowledge of what their servant has done, they ratify it.

3.  Partnership—Nature of Partnership.—A partnership is like a corporation, a legal entity, except in a more limited sense and a firm, like a corporation, may have agents, and may be liable for their acts of commission and omission in all cases where a corporation would be liable.

4.  Partnership — Corporations — Torts of Agent — Liability of Principal.—A partnership or corporation is not liable for slander by its servants unless the actionable words were spoken by its express consent, direction, or authority, or were ratified or approved by it.

5.  Master and Servant—Wrongful Acts of Servant—Liability of Master.—The general rule that, when it is attempted to hold a master liable for the wrongful act of his servant, it is sufficient to describe the wrongful act, and charge that it was

Duquesne Distributing Co. v. Greenbaum.

done by the servant while acting within the scope of his employment, is particularly true in cases involving injury to person or property by a physical act or omission of the servant that involved a wrongful act or breach of the duty of the master to the person injured, but it does not apply when it is attempted to hold a master in slander for words spoken by his servant.

6.   Master and Servant—Slander by Servant.—To charge a master with liability for the slanderous utterance of a servant, it is not sufficient to aver and prove that the servant at the time was engaged in the service of the master or was acting within the scope of his employment, but it must be further averred and proved that the master authorized the servant to speak the actionable words, or afterwards ratified their speaking.

7.   Partnership—Slander by Agent—Liability of Principal.—A firm engaged in selling liquor to liquor dealers is not liable for slanderous words uttered by a traveling salesman with respect to a concern not a competitor, where the firm neither authorized the salesman to speak the words nor ratified them.

A. T. BURGEVIN for appellant, (no brief).

CHATTERSON & BLITZ for appellee.

### POINTS AND AUTHORITIES.

1.   A joint action against two or more for slander cannot be maintained. Webb v. Cecil & Vaughn, 9 B. M. 198 Townsend on Slander & Libel, Sec. 118 and note.

2.   To hold the principal liable for the slanderous utterances of his agents or servants, there must have been express authority or a subsequent ratification. Newell on Defamation, Slander & Libel, 373; 18 Am. & Eng. Ency. of Law, 1059; S. M. Burgess & Co., v. Patterson, 32 Ky. Law Rep., 624.

3.   The language charged is not actionable per se, consequently special damages must be alleged. 25 Cyc. 455; 5 Enc. Pleading & Practice, 768; Windsich Company v. Bacon, 21 Ky. Law Rep. 928; Newell on Defamation, &c., page 868; Tharp v. Nolan, 119 Ky. 870; McNamara v. Shannon, 8 Bush 558.

4.   The language charged to appellees is not defamatory and not actionable, as it does not affect appellants in their trade, calling or occupation. Winsett v. Hunt, 21 Ky. Law Rep. 922.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this action for slander by appellants against the appellees a demurrer was sustained to the petition as amended, and the petition dismissed; so that the only question we are called upon to consider is whether or not the petition as amended stated a cause of action.

It averred, in substance: That the Duquesne Distributing Company is a corporation engaged in the manufacture and sale of an aperient water known by the trade-name as "Red-Raven," sometimes known as "Red Raven Splits," which product had been extensively advertised by the plaintiff at great expense, and had become well known throughout the United States and elsewhere, and the plaintiff had enjoyed a profitable business arising from the sale thereof throughout the state of Minnesota and elsewhere. That "Red Raven" was sold principally to persons engaged in the sale of liquor at wholesale and retail, and the good will and friendship of such persons was in consequence of great importance and value to the plaintiff in the conduct of its business; and it did enjoy the confidence and good will of its customers and make very large sales of its product to them and realized large profits from such sales. That the defendants, desiring and intending to injure the plaintiff in its business standing and favor with its patrons and customers so engaged in the liquor trade, on or about March 1, 1908, at the city of Duluth, in Minnesota, falsely and maliciously made the following statement of and concerning the business of plaintiff to ———, who was and is engaged in the business of selling liquor at said place, and was a customer of the plaintiff and a dealer in the product of plaintiff: "They (meaning the plaintiff) contributed the sum of $10,000 to the anti-saloon cause"—and made the fol-

lowing statement to ————: "The Duquesne Distrib-
uting Company (meaning thereby the plaintiff) have
appropriated $10,000 to further the prohibition move-
ment." That said words spoken of and concerning
the plaintiff were spoken and published by persons
who were salesmen or traveling agents of the de-
fendant, and they spoke and published the said words
and statements while acting within the scope of their
authority as such salesmen and agents. That by
means of the false and malicious statements of de-
fendants the plaintiffs lost the good will and confi-
dence of many of their customers, who were led to be-
lieve the truth of said statements, and the business
standing of plaintiffs with their customers was there-
by injuriously affected, and the plaintiffs lost the cus-
tom and trade of their said customers, and the cus-
tom and trade of many other persons engaged in the
sale of liquor who would otherwise have dealt in the
product of plaintiffs. That by reason of the circula-
tion of the said false and malicious statements of de-
fendants the business of the plaintiff has fallen off
and decreased so that the plaintiff has sustained loss
and damage to the amount of $10,000.

In considering the case before us, two principal
questions are presented: First, can a partnership be
sued for slander; and, second, is a partnership liable
for slanderous statements made by its agents or em-
ployes?

All the authorities are agreed that slander, which
is an oral utterance of defamatory matter, must nec-
essarily be committed by an individual. Two or more
persons cannot in the very nature of things jointly ut-
ter the same words. Each must and does speak for
himself, and each is liable for his own language. A
dozen persons might repeat identically the same slan-

derous words at one and the same time or at different times, and each would be liable in an action against the individual; but two or more of them could not be jointly sued. In Webb v. Cecil & Vaughan, 9 B. Mon. 198, 48 Am. Dec. 423, Cecil and Vaughan were jointly sued for slander by Webb. A demurrer was sustained to the petition. In passing on the case the court said: "That the matters alleged would be sufficient to sustain civil actions against the defendants we apprehend there can be no doubt, but we are not satisfied they are sufficient to sustain an action against them jointly. The tort complained of is verbal slander, and nothing more, for which it seems a joint action against two cannot be maintained. For a libel signed and published by two a joint action may be supported, upon the ground that it is an entire offense, and one joint act done by them both. But such an action cannot be maintained against two for slanderous words because the words of one are not the words of the other. The act of each constitutes an entire and distinct offense. And a further reason may be suggested that the same words spoken by one may occasion · greater injury than spoken by another, and that each should only be responsible for the injury inflicted by his own independent act." To the same effect is Cooley on Torts, p. 124; Newell on Slander and Libel, p. 382; Townsend on Slander and Libel, Sec. 118.

But, although partners are not jointly liable and cannot be sued as a partnership for defamatory words spoken by any one of them, unless by the direction or authority or with the approval of the others, they may be held liable as a firm for slander committed by an agent or servant whom they have directed or authorized to speak the words for them, or in their behalf or interest, or in furtherance of their business. And

this rule may with propriety be so extended as to
make them liable, if, with the knowledge of what their
agent or servant has done in this particular, they ap-
prove or ratify it, although in the first instance it may
not have been done with their knowledge or consent
or by their authority. A partnership in so far as its
liability for the slanderous utterances of an agent or
servant is concerned stands on the same footing as a
corporation. A partnership is a legal entity as well
as a corporation, except in a more limited sense.
The firm as well as the corporation may have agents,
and be liable for their acts of commission and omis-
sion in all states of case that a corporation would be
liable. But this liability, as we shall presently point
out, is not so general where it is sought to recover
for slanderous words spoken by the agent as it is in
the case of an ordinary tort committed by the agent.
That a corporation or partnership may be sued in
libel for actionable words written and published by
its agents is well settled, not only by the decisions of
this court but by the authorities generally.

In Newell on Slander and Libel, p. 373, it is said:
"If a partner in conducting the  business of a firm
causes a libel to be published, the firm will be liable
as well as the individual partner. And so, if an agent
or servant of the firm defames any one by the express
direction of the firm, or in accordance with the general
orders given him by the firm for the conduct of their
business. To hold either of the members of a partner-
ship, it is not necessary that the partner should pub-
lish the libel himself. It is sufficient if he authorized,
incited, or encouraged any other person to do it; or,
if having authority to forbid it, he permitted it, the
act was his." Burgess & Co. v. Patterson, 106 S. W.
837, 32 Ky. Law Rep. 624; Pennsylvania Iron Works

Co. v. Voght Machine Co., 96 S. W. 551, 29 Ky. Law
Rep. 8, 861 L. R. A. (N. S.) 1023; John Rivers v. Ya-
zoo & Miss. Val. R. Co., 90 Miss. 196, 43 South. 471, 9
L. R. A. (N. S.) 931; Gilbert  v.  Crystal  Fountain
Lodge, 80 Ga., 284, 4 S. E. 905, 12 Am. St. Rep. 255;
Singer Manufacturing Co. v. Taylor, 150 Ala. 574, 43
South, 210, 9 L. R. A. (N. S.) 929, 124 Am. St. Rep.
90; Sawyer v. Norfolk Southern R. Co., 142 N. C. 1,
54 S. E. 793, 115 Am. St. Rep. 716, 9 Am. & Eng. Ann.
Cas. 440; Washington Gaslight  Co.  v.. Lansden,  172
U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543.

It is true that these authorities relate to actions
for libel, but upon principle there can be no sound
reason why the corporation or partnership may not
also be sued for the  slanderous  utterances of its
agents or servants.  Libel is no more a tort than slan-
der; the only difference between them being that in
libel the words are written, while in slander they are
spoken.  If the principal may be liable for what his
agent writes, we think he should likewise be liable
for what he speaks.  In each case the wrong is the
same, and although there is a dirth of authority on
the subject of the liability of a partnership or corpor-
ation for the slanderous utterances of its agents or
servants, we hold that within the limitations herein-
after set out they may be sued for slander.  Without
including in what we say the rules applicable when the
action is for libel, and confining our opinion to actions
for slander, as that is the question we are dealing
with, we think that a partnership or corporation can-
not be held liable for the slanderous utterances of its
agents or servants unless the actionable words were
spoken by its express consent, direction, or authority
or are ratified or approved by it.  Generally speaking,
when it is attempted to hold the master or principal

liable for the wrongful acts of his servant or agent, it is sufficient to describe in a general way the wrongful act, and charge that it was done by the servant while acting within the scope of his employment. This is particularly true in cases involving injury to persons or property, where some physical act is done or omitted to be done by the servant that involved a wrongful act or a breach of duty upon the part of the master to the person injured. But a different rule should be applied when it is attempted to hold the master or principal in slander for defamatory words spoken by his agent or servant. Slanderous words are easily spoken, are usually uttered under the influence of passion or excitement, and more frequently than otherwise are the voluntary thought and act of the speaker. Or, to put it in another way, the words spoken are not generally prompted by or put into the mouth of the speaker by any other person, and represent nothing more than his personal views or opinions about the person or thing spoken of. If principals or masters could be held liable for every defamatory utterance of their servants or agents while in their service, it would subject them to liability that they could not protect or guard against. No person can reasonably prevent another, not immediately in his presence, from giving expression to his voluntary opinions, however defamatory they may be. It would be entirely out of the question to hold the principal or master responsible for every reckless, thoughtless, or even deliberate speech made by his agent or servant concerning or relating to persons that the agent or servant may meet, or know, or come in contact with while in the service of his principal or master. As to other torts or wrongful acts committed by the servant or agent, and for which the master or principal may be

liable, they can as a general rule guard against by exercising care in the employment of agents and servants and in the selection and use of the appliances or things they work with. But no sort of reasonable care that the master or principal could exercise in employment or control would enable him to prevent his servant or agent from the use in his absence of language that might be actionable. A speech by the agent or servant when absent from the principal or master is absolutely within his power alone to regulate or control. He may be prudent and discreet, or reckless or careless in his conversation. He may have his tongue under perfect control, or under no control whatever, may talk freely about persons and things, or talk little. And so we think that, when it is sought to charge the master or principal in any state of case with liability for defamatory utterances of the servant or agent, it is not sufficient to aver or prove that the servant or agent at the time was engaged in the service of the master or principal, or acting within the scope of his employment in the ordinary use of that word. But it must be further averred and shown that the principal or master directed or authorized the agent or servant to speak the actionable words, or afterwards approved or ratified their speaking. Tested by this rule, the petition was bad. The charge is that ''the agents or servants were salesmen or traveling agents of the defendant partnership, and that they spoke and published the said words and statements while acting in the scope of their authority as such salesmen or agents.'' The agents who spoke the words charged were at the time acting as the agents of Greenbaum Bros., in the sense that they were then engaged in selling liquor for them, but it does not appear from the petition that it was

any part of their duty under directions from Greenbaum Bros., to in any way speak of or concerning the Duquesne Distributing Company or its product or that the agents spoke the words charged by the consent or approval or in the interest of or to promote the business of their employer. No reason is assigned why Greenbaum Bros. should desire to injure the trade or business of the distributing company. The two concerns were not competitors in any sense of the word. The goods sold by one did not interfere with the sale of goods by the other. Greenbaum Bros. were not concerned in or prejudiced in any personal or business way by the sale of "Red Raven Splits." The facts of this case as presented in the petition confirm us in the correctness of the view we have as to the facts necessary to be alleged and proven to hold a partnership, individual, or corporation liable for defamatory words spoken by an agent or servant. Here a firm having its principal place of business in this state, with salesmen selling its goods all over the country, is sought to be made responsible in damages because one or two of its agents in a distant state uttered a slanderous speech concerning a party with whom it had no business or other relations and no reason to desire to prejudice or injure. If, under this state of facts, Greenbaum Bros. could be sued for the utterances of their agents, they could likewise be sued for any slanderous statements made by them concerning any person whom they might meet or come in contact with or see proper to discuss in the course of their travels. To lay down a rule like this would be ruinous to persons who are obliged in the conduct of their business to employ agents and servants. But when the principal or master directs or authorizes the agent or servant to speak certain words, or if

with knowledge·of their speaking ·he approves or ratifies them, he assumes a direct responsibility for the acts of his agent or servant, and subjects himself to an action to the same extent as if he had spoken them himself.

This view of the case renders it unnecessary to consider the questions raised by counsel as to whether or not the petition sufficiently sets out the special damages sustained to authorize·a recovery.

Wherefore the judgment of the lower court is affirmed.