THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ALFRED REGER, Appellant.

First Department, April 11, 1961.

64

*Peter L. F. Sabbatino* of counsel (*Rudolph Stand* with him on the brief; *Sabbatino & Todarelli*, attorneys), for appellant.

*Daniel J. Sullivan* of counsel (*Charles W. Manning* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

STEVENS, J. This is an appeal by the defendant from a judgment of conviction rendered in the Court of General Sessions July 30, 1957, upon a verdict convicting the defendant, after trial, on three counts of the crime of extortion (Penal Law, §§ 850, 851, subd. 1). The defendant was sentenced to State prison for a term of not less than 5 years nor more than 10 years on each of said counts, such sentences to run concurrently.

Appeal was taken from the judgment of conviction by notice dated July 30, 1957. Thereafter, and on August 7, 1957, a certificate of reasonable doubt was granted and the defendant is now on bail.

In passing it might be noted that we disapprove of the practice of extensive periods of time elapsing between the taking of an appeal and the argument or submission thereof. Where certificates of reasonable doubt have been granted undue delay should particularly be avoided. (See Code Crim. Pro., § 529.)

February 20, 1957, an indictment was returned by the Grand Jury of the County of New York charging the defendant and one other with the crimes of conspiracy and extortion. A second indictment for conspiracy, attempt to commit the crime of extortion and extortion, was filed against the defendant on March 4, 1957. The two indictments were consolidated for trial

and a severance granted as to the codefendant who was named in only one of the indictments.

Certain counts were dismissed on motion during trial until only three counts remained. These were submitted to the jury and the defendant convicted thereon.

In substance the respective counts upon which the defendant was convicted charged that the defendant, from on or about December 16, 1954, to on or about June 22, 1955, extorted from William R. Baird and Frank Dowgwilla, officers of Special Box & Lumber Company, Inc., the sum of $1,000 by means of a threat to do an unlawful injury to the property of the corporation by unlawfully picketing its place of business, and to unlawfully hinder, impede and obstruct the proper conduct of the business.

A second count, in similiar language, charged that defendant obtained the sum of $250 from the same officers between on or about October 11, 1956 and October 19, 1956.

The third count charged that the defendant obtained the sum of $500 in similar manner from Robert Goldberg, an officer of Felter Coal & Lumber Company, Inc., from on or about March 21, 1955, to on or about April 22, 1955.

The essential testimony on the basic issues of the crimes charged may be summarized briefly. There was testimony that Special Box & Lumber Company, Inc., had a secret agreement with another labor union of which the employees of Special Box & Lumber Company, Inc., herein referred to as Special Box, were unaware. So far as the employees knew, they were working in a nonunion shop at that time. In November, 1954, a picket line, which included two employees of Special Box, was placed in front of the premises by Local 522 of the Teamsters Union. Thereafter negotiations ensued which resulted some two weeks later in a contract. There was testimony that during the course of the negotiations the defendant demanded the sum of $2,000 for a favorable or " soft " contract. The testimony was further that this demand was eventually reduced to $1,000 and paid in four cash installments of $250 each. These payments were not made to the defendant in person, but were allegedly made following calls from the defendant that someone would come to their office to pick up the money. The person or persons allegedly receiving the money was not identified.

The **payment of $250** was allegedly made to a representative of the defendant, not otherwise identified, as the first installment of $500 per **year**, demanded by defendant for the negotiation of a new **two-year contract.**

The $500 payment charged to have been made by Goldberg on behalf of Felter Coal & Lumber Company, Inc., a New Jersey

corporation, was allegedly paid directly to the defendant by Goldberg on April 22, 1955, in a diner at Fort Lee, New Jersey.

The defendant, who had no previous record and who apparently possessed a good reputation prior to the instant conviction, was secretary-treasurer of Local 522, a bona fide union, which received its charter from the Teamsters Union in February, 1954. The defendant testified in his own behalf and denied any acts of extortion or that he had ever sent anyone to pick up any money from the officers of Special Box.

There were about 25 character witnesses who testified in defendant's behalf. Many of these witnesses had business dealings and some had entered into labor contracts with the defendant. All testified to the good reputation of the defendant for integrity.

The foregoing brief, recital, brief in the sense that this trial of approximately six weeks duration produced a record of some 1,700 printed pages plus exhibits, indicates that sharp issues of fact were presented to the jury for its determination. If the case consisted of no more than this, assuming the trial to have been conducted with the usual interplay and interaction of forces and evidence offered properly in support of the charges or to sustain the defense, the resolution of the jury, as expressed by the verdict, would not be disturbed. There is no doubt that there was evidence which in law was sufficient to sustain the conviction if the jury accepted and believed the testimony. That the jurors deliberated at length is attested to by their requests to the court and by the 10½ hours which elapsed between the time the case was placed in their hands and the returning of their verdict.

But much more occurred than is embraced in the recital and it is upon such occurrences that the defendant, in the main, predicates his contention that substantial prejudicial error was committed.

While the defendant was on the stand and during the course of the cross-examination, he was questioned about his knowledge of or relations with five named persons. The interrogation had to do entirely with collateral matters, and would neither tend to prove nor disprove the charges of extortion. None of the five persons about whom the defendant was interrogated had been named in the People's direct case or by the defense in its cross-examination of the People's witnesses, or in the direct presentation of the defense.

As the cross-examination of the defendant progressed, and after the Assistant District Attorney questioned the defendant about his knowledge of or relationship with one of the persons

above referred to, the prosecutor would then, over the defendant's objection, play a tape recording in the presence of the jury. Questions would then be directed to the defendant about the content of the recordings. The court stated first that the tapes were allowed on the issue of credibility, and later asserted they were allowed to refresh the memory of the witness. The avowed purpose of the prosecutor was to refresh the witness' recollection. The People's brief recites, however, that the procedure was used twice to attack the credibility of the defendant in general.

The five persons referred to were sometimes identified as to their occupation by means of the cross-examination, though the activities or business of such persons were not described in detail. However, the defendant was questioned extensively about the subject matter of the tapes as well as his knowledge of the persons named in the recordings. Not infrequently the questions ranged far afield and bore not the slightest relation or resemblance to the charges for which the defendant was on trial. Great stress by constant repetition was laid upon the name of at least one of the individuals. Mere repetition for a proper purpose is not objectionable. However, when it is used to create an atmosphere hostile to a fair trial, or in the hope that by sheer power of repetition a contrary answer on collateral matters will be compelled, the practice should not be permitted or condoned. Timely objection was made and unavailingly repeated to the entire procedure.

On appeal, the defendant-appellant asserts (1) the "cross-examination of defendant was unfair and prejudicial by reason of the prosecutor's indefensible and unjustifiable use of the tape recordings to refute defendant's testimony as to collateral matters "; (2) " the use of taped interstate telephone conversations between the defendant in New York and Goldberg in New Jersey was prejudicial and requires a reversal of the judgment of conviction."

The People say the trial was free of prejudicial error and the guilt of the defendant was established beyond a reasonable doubt.

Point 2, though not abandoned by the defendant, was not stressed on the argument of the appeal in light of a recent decision of the Supreme Court of the United States. There is no merit to the contention of the defendant on this point, for even if the evidence were illegally obtained it would still be admissible under our policy. (*People* v. *Richter's Jewelers*, 291 N. Y. 161; *People* v. *Variano*, 5 N Y 2d 391; cf. *Pugach* v. *Dollinger*, 365 U. S. 458.)

The first point raised by the appellant may not be so easily disposed of. There are fairly well-established principles dealing with credibility, refreshing the recollection of a witness, and interrogation on collateral matters. Wigmore, referring to *Attorney-General* v. *Hitchcock* (1 Welsb. H. & G. [Exch. Rep.] 91, 99), states the test of collateralness to be — " Could the fact, as to which the prior self-contradiction is predicated, have been shown in evidence for any purpose independently of the self-contradiction? " (3 Wigmore, Evidence [3d ed.], § 1020.) Or, as POLLOCK, C. B. expresses it — " if the answer of a witness is a matter which you would be allowed on your part to prove in evidence — if it have such a connection with the issue, that you would be allowed to give it in evidence — then it is a matter on which you may contradict him." (*Attorney-General* v. *Hitchcock, supra,* p. 99.) While the rules are fairly definite in language, their application admittedly may not be made with the precision or accuracy of a tested mathematical formula.

It must be recognized that a defendant in a criminal trial is never obliged to become a witness (Code Crim. Pro., § 393), but when he elects to testify in his own behalf " his conduct as a witness must be measured by the same standards as apply to the conduct of other witnesses " (*People* v. *Connolly,* 253 N. Y. 330, 341; Richardson, Evidence [8th ed.], § 534; 3 Wharton's Criminal Evidence [11th ed.], § 1323 *et seq.*).

The rule is well settled that a defendant who takes the witness stand may, like any other witness, be cross-examined concerning any previous vicious, illegal or immoral act he committed which affects his character and tends to show that he is not worthy of credit. Though such examination is as to collateral matters, the evidence sought must be pertinent to the issue, in that it either tends legitimately to discredit his evidence, or bears an incidental relation to a material fact to be proved. In other words, questions should not be asked merely for the purpose of obtaining contradictory answers. (*People* v. *Tice,* 131 N. Y. 651; *People* v. *Webster,* 139 N. Y. 73.) We are not discussing the proof of other crimes permitted by statute or the exceptions referred to in *People* v. *Molineux* (168 N. Y. 264), which are not applicable here. Where the interrogation seeks merely to impeach credibility and the questioning is not properly classified in either of the above categories, it is collateral in its truest sense. The manner and extent of cross-examination on collateral issues is largely within the discretion of the Trial Judge (*People* v. *Malkin,* 250 N. Y. 185, 197). Where such evidence as is elicited on cross-examination on collateral matters does not bear directly upon the main issue, it is the duty and obligation of the

court to state clearly the limitation of its scope and application (*People* v. *Webster, supra*). Such cross-examination should not be so broad that it would tend to draw the minds of the jurors from the real point on which their verdict is sought and possibly impel an unfavorable conclusion by reason of the prejudicial matter elicited. Absent plain abuse and injustice the exercise of such discretion will not be condemned (*La Beau* v. *People*, 34 N. Y. 223, 230). The test of relevancy is whether evidence is logically probative or calculated to effect rational persuasion. (1 Ford, Evidence, § 5; 1 Wigmore, Evidence [11th ed.], § 11 *et seq.*; cf. *People* v. *Johnston*, 228 N. Y. 332, 339, reargument denied 229 N. Y. 571.).

It would seem that the interrogation as to vicious, criminal or immoral occurrences, though collateral, must relate to specific acts (cf. *People* v. *De Garmo*, 179 N. Y. 130; *People* v. *Johnston, supra*; *People* v. *Conroy*, 153 N. Y. 174), or matters honestly intended to test his credibility.

Normally " [w]hen the credibility of the defendant as a witness was assailed by compelling him upon his cross-examination to give testimony which, although competent for purposes of impeachment [i.e., to show his testimony is unworthy of belief], was collateral to the main issue, the prosecution, at whose instance the collateral evidence was elicited, was bound thereby and had no right to contradict it.'' (*People* v. *De Garmo, supra*, p. 135.) This does not mean where the defendant witness is interrogated as to a vicious, criminal or immoral act, that a mere negative answer precludes further probing as to that specific act, if the questions have some basis in fact and if the District Attorney acts in good faith " in the hope of inducing the witness to abandon his negative answers '' (*People* v. *Sorge*, 301 N. Y. 198, 200). In the aspect of this case with which we are concerned *People* v. *Sorge* merely removed a barrier, conditionally, to further interrogation of the defendant as to specific acts. It did not hold that evidence impeaching a witness' credibility (excluding those instances permitted by statute) may be proved by extrinsic evidence. In this case the contents of the tapes are extrinsic evidence not permitted to be introduced, and such evidence improperly introduced could have had the effect of suggesting to or creating in the minds of the jurors an impression of other wrongdoing independent of the crime charged. (Cf. *People* v. *Evans*, 224 App. Div. 415.) It could also, on matters not material, by the use of improper evidence lead the jury to conclude to defendant's detriment that the defendant had not spoken truthfully. An example of this is found in the question if the defendant had

directed his secretary not to give to a named person the telephone number where defendant might be reached.

Moreover, I am of the opinion that error was committed by permitting the contents of tapes, marked for identification only, and which dealt solely with collateral matters, to be played to and the contents heard by the jury. In *People* v. *Johnston* (228 N. Y. 332) the defendant, on trial for forgery, testified in his own behalf, and was questioned on a collateral matter at some length about a letter. The questions were for the purpose of affecting his credibility. The defendant was shown the letter, identified it, and testified that he acted in response to and for the purpose indicated in the letter. All of this was done before the letter was offered or received in evidence. The jury never became aware of the contents until after the defendant, in effect, adopted the letter. At that point it properly became substantive evidence. The Court of Appeals stated (p. 336): " Had the accused denied sending the money or taking any action in response to the letter of Leo Stein, the letter would have been *clearly* inadmissible. The prosecution would have been bound by the defendant's answer."

In the case before us, the entire contents of the tapes were spread before the jury prior to any adoption or rejection of the same by the defendant and before such tapes were received in evidence. Thus the jury had for its consideration matters which, under the rules of evidence on collateral issues and credibility, were clearly not admissible. This immaterial and sometimes incompetent and irrelevant evidence became, in effect, primary evidence.

Turning now to the contention of the People that the tapes were used to refresh the recollection of the accused. It is recognized that when an accused takes the stand he appears in the dual role of witness and defendant. The rule as to refreshing recollection is plain, though its application is not always evident. Generally, it must be shown that a witness' present recollection is exhausted before it is permissible to attempt to refresh such recollection by extraneous means or documents. (See, generally, 1 Ford, Evidence, § 20; 2 Ford, Evidence, § 211 *et seq.*) Any writing may then be used to stimulate or revive the witness' recollection provided it actually serves that purpose. (We are not here dealing with any question of past recollection recorded and the justification of necessity for its use, so the principles applicable thereto will not be discussed.) Once the witness' recollection is refreshed he testifies thereafter as a result of such refreshed recollection. The writing or document which revives a present recollection is not evidence and may not be

shown to the jury by the party using it. Opposing counsel, however, have a right to inspect it and use it to test the credibility of the witness. (*People* v. *Gezzo,* 307 N. Y. 385; *People* v. *Betts,* 272 App. Div. 737.) Such opposing party, not the offering party, has a right to have the jury see it. (3 Wigmore, Evidence [3d ed.], §§ 763, 764; cf. *Mattison* v. *Mattison,* 203 N. Y. 79.)

It should be noted that the tapes were not offered as admissions, nor under the theory of prior contradictory statements of some fact material to the issue. The divulging to the jury of their contents even before a query is addressed to the witness as to a refreshed recollection renders the procedure the more objectionable. While used ostensibly to refresh the witness' recollection, it is difficult to conclude other than that their use was designed to aid conviction on the main charge by proof of certain personal associations to which, as here used, sinister connotations inevitably attached. The tapes were used assertively as substantive evidence, and it is not proper under the guise of refreshing the recollection of an accused to place before a jury matter or documents otherwise inadmissible (cf. *United States* v. *Provoo,* 215 F. 2d 531 [C. C. A. 2d]).

The Harvard Law Review (64 Harv. L. Rev. 1369) points out that " [a]lthough a recording [transcribed from a tape] is not colloquially considered to be a writing, it is defined as such in the Model Code of Evidence, Rule 1(17) (1942)." The observation is made in connection with the best evidence rule. If we analogize a tape recording to a writing it becomes even more apparent that where used to refresh a recollection on collateral matters, its contents, if at all admissible, certainly should not in the first instance be read or played to the jury.

It is obvious that despite arguments to the contrary the effect was to impeach and discredit the witness on collateral matters in a manner calculated to create an impression of improper or wrongful conduct, independent of the main issue. Nor could the evidence adduced thereby be classified as vicious or criminal, and it is doubtful that it could be characterized as immoral as that term is used in the criminal law. It is apparent that there was an abuse of discretion and grave error was committed which did violence to substantial rights of the defendant.

Accordingly, the judgment appealed from should be reversed on the law and in the interests of justice, and a new trial granted.

RABIN, J. P., VALENTE, McNALLY and STEUER, JJ., concur.

Judgment of conviction unanimously reversed upon the law and in the interests of justice and a new trial ordered.