DISABLED AMERICAN VETERANS, DEPARTMENT OF KENTUCKY, INC. and Samuel Booher, Appellants,

v.

Wetonah CRABB, Appellee.

No. 2003–CA–001388–MR.

Court of Appeals of Kentucky.

July 22, 2005.

Rehearing Denied Nov. 30, 2005.

542

Thomas B. Givhan, Shepherdsville, KY, for Appellant.

Jerry L. Ulrich, New Albany, IN, for Appellee.

Before GUIDUGLI and MINTON, Judges; EMBERTON, Senior Judge.[1]

*OPINION*

MINTON, Judge.

Following a jury trial, the circuit court entered judgment in favor of Wetonah Crabb awarding damages in her wrongful termination and slander suit against the

---

1. Senior Judge Thomas D. Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Disabled American Veterans, Department of Kentucky, Inc., (DAV–KY) and Samuel Booher. The DAV–KY and Booher have appealed claiming the circuit court committed specific trial errors amounting to abuse of discretion and affecting the outcome of the trial. Upon review of the whole record we must reverse and remand for a new trial because we conclude that the court erred to DAV–KY and Booher's substantial prejudice during the trial by denying their counsel's request to examine notes read into evidence by an important adverse witness and by instructing the jury that it could award joint damages for slander.

## I. Crabb's Employment Suit Against DAV–KY and Booher.

Crabb was employed by DAV–KY for nearly ten years. Although she served DAV–KY in several capacities during her whole tenure there, her last position was as DAV–KY's comptroller.

On January 3, 1996, Crabb was called into Booher's office where a confrontation ensued. What happened that day is disputed: Crabb claims Booher fired her from her position with DAV–KY, while Booher claims Crabb quit. Regardless Crabb left her employment with DAV–KY six days later.

On January 31, 1996, Crabb sued DAV–KY, Commander Robert Stambaugh,[2] and Sam Booher, individually and in his capacity as Adjutant of DAV–KY. Crabb alleged that she was terminated without "right, cause or justification" resulting in "a breach of the contract of employment." Crabb further alleged that she was denied "the administrative remedies provided in the Constitution and By–Laws of the DAV–KY" and that, while employed, she

was "required to perform the duties of her employment in a hostile environment created by and resulting from harassment by certain male co-employees and members of management including the Defendant Booher." Crabb also claimed that upon her departure from DAV–KY, Booher "made false, defamatory and slanderous accusations against [her] causing [her] embarrassment, humiliation and mental distress to her damage and detriment on that account."

After years of motions, discovery requests, and rescheduled hearings, the case came to trial the first time in October 2000. The jury found for Crabb against the DAV–KY for wrongful termination and against Booher for slander. The jury awarded Crabb damages from DAV–KY in the amount of $31,083.33 and from Booher in the amount of $20,000.00.

Following the trial, DAV–KY and Booher filed a motion for judgment notwithstanding the verdict (JNOV); a motion to alter, amend, or vacate judgment; a motion for a new trial; and a motion for an amendment of the court's judgment under CR 60.02. DAV–KY and Booher argued Crabb failed to meet her burden of proof. They also claimed that specific errors of law occurred at trial and that the verdict was not sustained by sufficient evidence.

The trial court granted a new trial. In so doing, the court ruled that an affidavit offered by the defendants should have been considered; that the jury's verdict was supported, in part, by misleading testimony from Crabb about her divorce; and that defense counsel's objections to evidence of slander at variance with that delineated in Crabb's pleadings should have been sustained.

**2.** Commander Stambaugh died while the trial was pending; therefore, the claims against him did not survive.

Over two years passed before the second trial. The jury in the second trial found that Crabb was wrongfully terminated from DAV–KY and awarded her $28,082.77 in damages. The jury also found that DAV–KY and Booher were jointly liable to Crabb for slander. The jury awarded her $30,000.00 in damages on the slander charges, with an additional $1,000.00 in punitive damages against Booher. DAV–KY and Booher, again, moved for judgment notwithstanding the verdict and a new trial; but the court denied the motions and signed a judgment in favor of Crabb. This appeal follows.

DAV–KY and Booher make six distinct arguments: first, that the trial court erred in failing to grant a directed verdict or judgment notwithstanding the verdict; second, that the trial court abused its discretion in the jury instruction on slander; third, that the trial court erred in refusing to permit the introduction of the minutes of the January 1996, DAV–KY board meeting; fourth, that the trial court erred by permitting the jury to consider the breach of contract claim; fifth, that the trial court abused its discretion in permitting the testimony of Crabb's ex-husband, James Crabb; and sixth, that the court erred in its jury instructions permitting joint damages against the DAV–KY and Booher. We will discuss each argument separately.

## II. DAV–KY and Booher's Failure to Cite to the Record.

■■■ The handling of this appeal compels us to reiterate that the rules of procedure require that "errors to be considered for appellate review must be precisely preserved and identified in the lower court."[3]

The rules further require appellate briefs to contain statements "with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner."[4]

The brief filed by DAV–KY and Booher lacks any reference to the record. And both sides fail to cite any pertinent Kentucky case law, statutes, or rules. In their reply brief, DAV–KY and Booher made a weak attempt to recover from this error by offering an array of references and corresponding arguments.

DAV–KY and Booher's brief ignores the rules of procedure. But CR 61.02 does state that an insufficiently raised or preserved error may be reviewed if it constitutes "[a] palpable error which affects the substantial rights of a party...." Under this rule, "appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."[5] So for purposes of clarity and diligence and to protect against potential injustice, we will review the arguments made by DAV–KY and Booher.

## III. Failure to Grant Motion for JNOV/New Trial.

■■■ DAV–KY and Booher first argue that the court abused its discretion by failing to grant their motion for judgment notwithstanding the verdict or a new trial. As a basis for this claim, DAV–KY and Booher contend that Crabb failed to allege the slander charges with sufficient detail in her complaint and that the court erred by allowing this issue to go to the jury. Because of these alleged errors, DAV–KY and Booher assert that the court should have granted their post-judgment motions.

3. *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky.App. 1990), *quoting*, *Combs v. Knott County Fiscal Court*, 283 Ky. 456, 141 S.W.2d 859 (Ky. 1940).

4. Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(v).

5. CR 61.02.

CR 50.02 states:

Not later than 10 days after entry of judgment, a party who has moved for a directed verdict at the close of all the evidence may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict.... A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.

When reviewing a trial court's denial of JNOV, "we are to affirm ... 'unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ.' " [6] Likewise, " '[t]he trial court is vested with a broad discretion in granting or refusing a new trial, and this Court will not interfere unless it appears that there has been an abuse of discretion.' " [7]

The law of defamation differentiates between two types of slander: slander per se and slander per quod. Words are slanderous per se when they "are presumed by law actually and necessarily to damage the person about whom they are spoken." [8] The words themselves "must tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people and to deprive him of their friendship, intercourse and society." [9] When there is a claim of slander per se, "there is a conclusive presumption of both malice and damage." [10] Therefore, "damages are presumed and the person defamed may recover without allegation or proof of special damages." [11]

In contrast, words that are slanderous per quod are not actionable on their face, "but may be so in consequence of extrinsic facts showing damage which resulted to the injured party." [12] With slanderous per quod statements, "[c]ourts focus not upon the actual meaning of the words but on the extrinsic facts which explain the meaning of the communications." [13] To establish an action for slander per quod, a plaintiff must affirmatively prove "special damages, *i.e.*, actual injury to reputation...." [14]

DAV–KY and Booher argue that Crabb's complaint was deficient because the slanderous words were not pled with specificity. Because Crabb did not plead the "specifics of the circumstances," they claim the trial court should have granted their motion for JNOV or a new trial.

In her complaint, Crabb alleged that Booher "made false, defamatory and slanderous accusations against [her] causing [her] embarrassment, humiliation and mental distress to her damage and detriment on that account." At trial, witness testimony revealed that the alleged slander concerned two different matters: first, that Crabb had engaged in a "sexual liaison" with one of her co-workers; and, second, that Crabb misappropriated or attempted to misappropriate funds.

6. *Fister v. Commonwealth*, 133 S.W.3d 480, 487 (Ky.App.2003).

7. *Id.*

8. *Elkins v. Roberts*, 242 S.W.2d 994, 995 (Ky. 1951).

9. *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1083 (W.D.Ky.1995).

10. *Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 794 (Ky.2004).

11. *Id.*

12. *Pangallo v. Murphy*, 243 S.W.2d 496, 497 (Ky.1951).

13. *CMI, supra.*

14. *Stringer, supra.*

Upon review of the record, we are satisfied that the defamatory statements were sufficiently disparaging on their face to constitute an allegation of slander per se. Comments regarding Crabb's supposed affair with a co-worker and her apparent mishandling of funds would certainly "expose [her] to public hatred, ridicule, contempt or disgrace." [15] There was no need to introduce extrinsic facts to explain the meaning of the comments; moreover, an explanation of the circumstances under which the comments were made was unnecessary. As such, Crabb was under no duty to plead special damages or actual injury to her reputation.

Because Crabb's complaint alleged slander with sufficient specificity, the court acted properly in putting this issue to the jury. And because there was no error, the trial court properly denied the motion for JNOV or a new trial on this issue.

### IV. Jury Instructions on Slander.

DAV–KY and Booher next argue that the court erroneously instructed the jury on slander. They contend that the "proof" in this case indicates Crabb "quit" on January 3, 1996. Her complaint was filed on January 31, 1996. Therefore, DAV–KY and Booher claim the instructions should have limited the jury to a finding that Booher slandered Crabb between January 3, 1996, and January 31, 1996. Because the instruction permitted the jury to consider any statement made after January 9, 1996, they claim it was "erroneous" and "outside of the pleadings."

The court's slander instruction read as follows:

You will find for the plaintiff, WETONAH CRABB, and against the Defendants if you are satisfied from the evidence as follows:

a. That after January 9, 1996, in the presence of another, Samuel Booher made a statement that was reasonably understood by such person to be damaging to the reputation of WETONAH CRABB.

During cross-examination, counsel for DAV–KY and Booher introduced James Crabb's (Wetonah's ex-husband) deposition testimony from his divorce proceedings with Crabb. The deposition testimony revealed that James spoke with Booher "once or twice" before January 3, 1996. But the testimony did not reveal that any slanderous statements were made during those initial conversations. In fact, James testified that during one of his pre-January 3, 1996, conversations with Booher, Booher stated "he never witnessed anything" between Crabb and her co-worker. We hardly think this statement could be considered slanderous.

Moreover, James's testimony did not reveal that Booher made any slanderous statements after January 31, 1996. In fact, the bulk of his testimony concerned the conversation he had with Booher on January 30, 1996.

We find nothing in the record to indicate that the jury heard evidence of slanderous statements made outside the period between January 9, 1996, and January 31, 1996. Likewise, there was absolutely no testimony involving statements made between January 3, 1996, and January 9, 1996. Therefore, we find no error in the instruction limiting the jury to statements made after January 9, 1996.

### V. Court's Refusal to Introduce Minutes of the January 1996 DAV–KY Board Meeting.

 DAV–KY and Booher's fourth argument is that the court erred by refusing

---

**15.** *CMI, supra.*

to allow the introduction of the minutes of the January 1996 DAV–KY Board Meeting. Specifically, DAV–KY and Booher contend that the court refused their request based on Crabb's statement that the minutes had not been produced in discovery. DAV–KY and Booher argue that Crabb's statement and the court's denial of their motion were mistaken since the "records had been disclosed and had been filed in the record."

We note that DAV–KY and Booher did not tell us where in this voluminous record the production of those minutes could be found. But we were able to find the minutes in the record and to confirm that they were, in fact, disclosed to the opposite side. Thus, the court's refusal of DAV–KY and Booher's request to introduce the document on the grounds stated was a ruling made on an erroneous basis.

But as Crabb points out, DAV–KY and Booher have not established or even argued that exclusion of the minutes was in any way harmful or prejudicial. They do claim that the minutes "[go] directly to the improper deposit issue." Frankly, we are puzzled about what this argument means.

CR 61.01 states:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

DAV–KY and Booher have failed to convince us that the trial court's denial of the

motion to introduce the minutes into evidence prejudiced their substantial rights. Therefore, we disregard this mistaken ruling as a harmless error.

## VI. Jury's Consideration of Breach of Contract Claim.

▮ DAV–KY and Booher's fifth claim of error is the court's decision to allow the jury to consider the breach of contract claim. The basis for this argument is DAV–KY and Booher's contention that the "circumstances occurring on January 3, 1996, are disputed." DAV–KY and Booher continue to assert that Crabb was "cursing and out of control and said she quit," while Crabb argues Booher fired her and she responded by saying, "You can't fire me, I quit." DAV–KY and Booher argue that because Crabb quit, the breach of contract claim should not have gone to the jury. They also contend that Crabb failed to exhaust her administrative remedies.

▮ Whether Crabb quit or was fired from her position with DAV–KY was a matter of fact for the jury to decide. CR 52.01 states that "[f]indings of fact shall not be set aside unless clearly erroneous...." There was sufficient proof in the record to support the jury's finding that Crabb was fired, and we believe there was substantial evidence to sustain the breach of contract claim. It is true that Crabb did not follow the administrative remedies set forth in the DAV–KY employment policy. But as the trial court noted in denying DAV–KY and Booher's motion to dismiss Crabb's complaint, Crabb's duty to seek administrative remedies under the employment policy did not arise "until such time as the Commander, Adjutant [sic] or Executive Committee files a notice of employee suspension or discharge." And because there was "no proof that any notice of employee suspension or discharge was

filed," Crabb was not obligated to seek administrative remedies.

Again, we are satisfied that this finding was based on substantial evidence. The record shows that regardless of whether Crabb quit or was fired, she never received notice of discharge from DAV–KY. Therefore, she was under no duty to seek remedies in accordance with the employment policy; and the court acted properly in sending the breach of contract claim to the jury.

### VII. Testimony of James Crabb.

DAV–KY and Booher next argue that the trial court abused its discretion in permitting Crabb's counsel to call James as a witness. Specifically, DAV–KY and Booher complain that James was not listed on Crabb's witness list; that he was permitted to testify out of order; and that they were not given access to notes he used during trial.

■ With regard to the first argument, DAV–KY and Booher argue that Crabb created undue bias and surprise by failing to comply with Bullitt Circuit Court's local rule CPR–300. This rule requires each party to furnish a witness list to the opposing side before trial. DAV–KY and Booher argue that Crabb violated CPR–300 by failing to list James as a potential witness.

From our review of the record, it appears that both parties exchanged witness lists before the first trial. And although James was omitted from Crabb's list, he was included as a potential witness on the list provided by DAV–KY and Booher.

Before the second trial, the circuit judge had the following conversation with counsel at the bench:

[MR. ULRICH]: We do[,] however[,] have another witness who I believe would be prepared to testify that he had conversation[s] with Sam Booher between January 3 and January 31st, 1996[,] relating to [Crabb's] alleged infidelity and relating to her use or manipulation of DAV funds.

THE COURT: Who is the witness?

MR. ULRICH: James Crabb.

MR. GIVHAN: Has he been named in this case?

MR. ULRICH: You have. He is your witness.

It is obvious, both from the fact that James was listed on their own witness list and from the above pre-trial conversation, that DAV–KY and Booher must have known about James and his potential role as a trial witness. And because DAV–KY and Booher were aware James might testify, we fail to see how his omission from Crabb's witness list was a surprise. So we find no fault with the court's decision to allow Crabb to call James as a witness in the second trial.

■ Second, DAV–KY and Booher argue that James was allowed to testify out of order. This, they claim, was an abuse of the court's discretion. We disagree.

The Kentucky Rules of Evidence say that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to: (1) Make the interrogation and presentation effective for the ascertainment of the truth; (2) Avoid needless consumption of time; and (3) Protect witnesses from harassment or undue embarrassment." [16] Because "[m]odern litigation creates a wide variety of problems related to interrogation of witnesses, production of evidence, and general trial management," trial judges are given "broad discretion . . . to deal with problems and situations

---

**16.** Kentucky Rules of Evidence (KRE) 611.

associated with the production of evidence." [17]

In light of this rule, we see no error in allowing James to testify out of order. This is the sort of case management decision that trial judges must make. And the judge's choice here does not constitute an abuse of discretion.

Finally, DAV–KY and Booher argue that the court erred by refusing to permit examination of the notes used by James to "refresh his memory." We agree with this contention.

To discuss the merits of this argument more comprehensively, we should clarify the distinction between present memory refreshed and past recollection recorded. KRE 612, titled "Writing used to refresh memory," states:

> Except as otherwise provided in the Kentucky Rules of Criminal Procedure, if a witness uses a writing during the course of testimony for the purpose of refreshing memory, an adverse party is entitled to have the writing produced at the trial or hearing or at the taking of a deposition, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

In contrast, KRE 803(5) describes past recollection recorded, which is an exception to the hearsay rule, as:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness'[s] memory and to reflect that knowledge

correctly. If admitted, the memorandum or record may be read into evidence but may not be received as an exhibit unless offered by an adverse party.

■■■ The difference between these two evidentiary concepts is subtle and is often the cause of confusion. As explained by the United States Court of Appeals for the Third Circuit in *United States v. Riccardi:*

> The primary difference between the two classifications is the ability of the witness to testify from present knowledge: where the witness'[s] memory is revived, and he presently recollects the facts and swears to them, he is obviously in a different position from the witness who cannot directly state the facts from present memory and who must ask the court to accept a writing for the truth of its contents because he is willing to swear, for one reason or another, that its contents are true.[18]

Citing the case of *Jewett v. United States,* the *Riccardi* Court commented that " '[i]t is one thing to awaken a slumbering recollection of an event, but quite another to use a memorandum of a recollection, fresh when it was correctly recorded, but presently beyond the power of the witness so to restore that it will exist apart from the record.' " [19]

In Kentucky, we recognize that present memory refreshed requires proof "that the witness has a memory to be refreshed," and "that it needs to be refreshed." [20] The rule permits the use of "[a]lmost any kind of writing ... to refresh memory, if the trial judge finds that the witness needs to review the writing to refresh memory and

**17.** Robert G. Lawson, The Kentucky Evidence Law Handbook, § 3.20[2], 238 (4th ed.2003).

**18.** 174 F.2d 883, 886 (3rd Cir.1949).

**19.** *Id., citing, Jewett v. United States,* 15 F.2d 955, 956 (9th Cir.1926).

**20.** Lawson, *supra,* § 3.20[7], at 247.

that the writing will likely serve that objective." [21] Because the writing "is only being used to refresh memory ... [it] never acquires independent status as evidence in the case." [22] Rather, "the evidence is the witness's refreshed memory and not the writing that was used to bring that memory to the surface." [23]

On the contrary, past recollection recorded "allows a witness with a faded memory to testify from notes or a memorandum that the witness can show was made by her or under her direction while the information was fresh in the witness'[s] memory and reflects that knowledge correctly." [24] The rule "requires the offering party to prove and the trial judge to find that the witness 'has insufficient recollection to enable the witness to testify fully and accurately' (taking into account the extent to which the memory can be refreshed from examination of the writing)." [25] Under KRE 803(5), "the recorded recollection is admissible, but only after verification of its accuracy. Even if admitted, 'the memorandum or record may be read into evidence but may not be received as an exhibit unless offered by an adverse party.'" [26] If a party's notes do refresh the party's recollection, "there is no need to admit the recording into evidence, because the witness will be able to testify from his or her refreshed memory." [27]

The transcript from James's direct examination at trial reads as follows:

Q. Mr. Crabb, did you have a telephone conversation with Samuel Booher in January of 1996?

A. Yes, I did.

Q. And do you know the number of conversations that you had in January of '96?

A. I would have to see my notes I made; a number.

Q. Do you know what the dates of those conversations were?

A. Not without looking at my logs.

Q. Did you bring the logs with you?

A. I do not have them.

Q. Let me show you now a copy of a document and ask you if you can identify that.

(WITNESS EXAMINING DOCUMENT)

A. Yes. This is my notes.

Q. And tell us what you mean by 'notes'. What ...

MR. GIVHAN: (INTERRUPTING) Your honor, I would like to see that, please.

MR. ULRICH: If I introduce this into evidence I will be glad to show it to you, Mr. Givhan.

DIRECT EXAMINATION BY MR. ULRICH: (CONTINUING)

Q. What do you mean by 'notes'? What are these?

---

21. LAWSON, *supra*.

22. LAWSON, *supra*, § 3.20[7], at 248. *See also*, *Berrier v. Bizer*, 57 S.W.3d 271, 277 (Ky.2001) ("The resulting evidence is the product of the refreshed memory, not the writing used to refresh it; thus, the writing is not introduced into evidence and there is no involvement of the hearsay rule.").

23. LAWSON, *supra*, at § 8.85[1], at 725.

24. *Hall v. Transit Authority of Lexington–Fayette Urban County Government*, 883 S.W.2d 884, 887 (Ky.App.1994).

25. LAWSON, *supra*.

26. *Berrier v. Bizer*, 57 S.W.3d 271, 277 (Ky. 2001), *quoting* KRE 803(5).

27. *Brock v. Commonwealth*, 947 S.W.2d 24, 30 (Ky.1997), *citing* LAWSON, *supra*, § 8.85, at 500.

A. During this time I kept detailed notes and logs, if you will, about the events occurring at that time.

Q. And they were kept by computer?

A. Yes.

Q. By yourself?

A. Yes.

Q. More or less contemporaneously with the events that they depict?

A. Yes.

Q. And was there a conversation between you and Mr. Booher on January 30th of 1996?

A. Yes.

MR. GIVHAN: Your Honor, may we approach the bench?

This objection prompted a bench conference. After the court overruled the objection, direct examination continued:

Q. I believe I asked you, Mr. Crabb, if you had a telephone discussion with Mr. Booher on January 30th, 1996?

A. Yes, I did.

Q. Without looking at your notes, would you have any personal recollections here today, these many years later, of the contents of that conversation?

A. No.

Q. By looking at your notes can you refresh your recollection and recall what you and Mr. Booher discussed that day?

A. Yes.

Further direct examination of James followed with James reading relevant portions of his notes into evidence.

Following extensive cross-examination, counsel for DAV–KY and Booher moved the admission of James's notes into evidence. The colloquy between counsel in open court appears in the trial transcript as follows:

MR. GIVHAN: May I see those notes, please, Counselor?

MR. ULRICH: They are not evidence. We call Mrs. Crabb.

MR. GIVHAN: I am going to make a motion that those notes be entered into evidence.

At that point, the judge invited counsel to the bench where the conversation continued outside the hearing of the jury:

MR. GIVHAN: He won't let me look at them because they're not in evidence, Your Honor. The man testified from them and I have got a right to see what he is testifying from.

THE COURT: He didn't introduce them into evidence. I don't know any—can you cite me some rule of law that requires him to let you look at them?

MR. GIVHAN: Call it natural justice, Your Honor. It is . . .

Upon review of James's testimony, it is evident Crabb's counsel wanted to establish that James had taken notes contemporaneously with the conversations he had with Booher; that James had recorded these notes himself; and that he would be unable to testify without them. James's notes undoubtedly served a greater purpose than merely to refresh his present memory. These recorded notes were the sole evidence of his past recollection. Without them, James could not have testified about his conversations he had with Booher. The testimony shows that James properly verified the accuracy of his own notes. Accordingly, these notes were read into evidence as allowed under the past recollection recorded exception.

██ But having established that James's use of his notes constituted a proper application of past recollection recorded under KRE 803(5), the question remains whether the court should have

denied adverse counsel's request to inspect these notes for cross-examination. There is nothing in the text of KRE 803(5) that explicitly says that the court must allow adverse counsel to inspect documents used for refreshing memory. But this practice is deeply rooted in the history of the exception. Dating back to 1794, courts have reasoned that "[i]t is always usual and very reasonable, when a witness speaks from memorandums, that the counsel should have an opportunity of looking at those memorandums, when he is cross-examining that witness." [28] The court in *Lord v. Colvin* further noted:

> If a paper is put into the hands of a witness to refresh his memory, if after that nothing comes of it, if nothing more be done, then the other party has no right to look at it. But if anything further is done, if the witness is asked and answers questions about the document or the facts referred to in it, then at law the party on the other side has the right to see the document. [29]

■ The modern rule is that "[i]n both civil and criminal cases, a record of past recollection, used as such ... must on demand be produced for inspection by opposing counsel and for use in cross-examination." [30] This rule is commonly accepted in other jurisdictions; [31] and, in Kentucky, our courts have observed that counsel "should [be] permitted to examine a paper which [a] witness [refers] to in giving his testimony." [32] The extent to which documents used to refresh recollection may be reviewed by opposing counsel remains a matter within the discretion of the trial court. [33]

Based on this principle, we believe that counsel for DAV–KY and Booher should

**28.** *Hardy's Trial,* 24 How. St. Tr. 200, 824 (1794); *see,* 2 WIGMORE ON EVIDENCE § 762, 136–137.

**29.** 2 Drewr. 205, 208 (1854); *see,* WIGMORE, *supra,* at 137.

**30.** 81 Am.Jur.2d *Witnesses* § 793 (1992).

**31.** *See, U.S. v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 233, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940) (Record used to refresh witness's memory "must be shown to opposing counsel upon demand, if it is handed to the witness."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cole,* 189 Conn. 518, 526, 457 A.2d 656, 660 (Conn.1983) ("If a witness, when testifying, uses a document to refresh his recollection, that document thereby becomes available for examination by the opposing party."); *State v. Royal,* 300 N.C. 515, 528, 268 S.E.2d 517, 526 (N.C.1980) (Opposing counsel's right of cross-examination and right to examine a document "are sufficient safeguards against improper practices or suspicious circumstances which may be associated with refreshing the memory of a witness."); *People v. Olson,* 59 Ill.App.3d 643, 647, 16 Ill.Dec. 660, 375 N.E.2d 533, 536 (Ill.App. 4 Dist., 1978) ("The item used to

refresh the witness' recollection must be furnished to opposing counsel on demand, even if the refreshment occurs prior to the time the witness takes the stand."); *Falcone v. New Jersey Bell Tel. Co.,* 98 N.J.Super. 138, 151, 236 A.2d 394, 401 (N.J.Super.A.D.1967) (Plaintiff "should have been permitted to examine and have the use of" records and notes used by defendant's medical examiner.); *People v. Reger,* 13 A.D.2d 63, 70–71, 213 N.Y.S.2d 298, 307 (N.Y.A.D.1961) ("The writing or document which revives a present recollection *is not evidence* and may not be shown to the jury by the party using it. Opposing counsel, however, have a right to inspect it and use it to test the credibility of the witness."); *Jackson v. State,* 166 Tex.Crim. 348, 349, 314 S.W.2d 97 (Tex.Cr.App.1958) ("It is well settled that where a witness, while testifying, uses a writing to refresh his recollection, the defendant or his counsel is entitled to inspect the statement for cross-examination purposes.").

**32.** *Milby v. Louisville Gas & Electric Company,* 375 S.W.2d 237, 241 (Ky.1964).

**33.** *See Durbin v. K–K–M Corp.,* 54 Mich.App. 38, 44, 220 N.W.2d 110, 114 (Mich.App. 1974).

have been allowed to see James's notes. Without access to these notes, there was insufficient opportunity for cross-examination and verification of the document's accuracy. While we recognize that the decision to preclude counsel from viewing James's notes was within the court's discretion, we conclude that this choice was an abuse of discretion.

■ Upon review of the trial transcripts, it is clear that James's notes provided an important evidentiary basis for Crabb's slander claim against Booher. Therefore, the denial of defense counsel's request to see those notes resulted in palpable error affecting the substantial rights of DAV–KY and Booher. So, we must reverse the judgment on this issue.

## VIII. Jury Instructions Permitting Joint Damages.

■ Finally, DAV–KY and Booher argue that the court erred by permitting the jury to award damages for slander jointly. In support of this argument, they claim "[t]here is absolutely no evidence DAV–KY knew of any slander or action by Mr. Booher and that it adopted or condoned [it]. There is no evidence Booher had the authority to fire [Crabb] or that DAV–KY condoned or adopted any and such action."

■ It is the rule that in certain situations, an employer may be held vicariously liable for the acts of its employee. As stated by the Kentucky Supreme Court:

Vicarious liability, sometimes referred to as the doctrine of respondeat superior, is not predicated upon a tortious act of the employer but upon the imputation to the employer of a tortious act of the employee "by considerations of public policy and the necessity for holding a responsible person liable for the acts done by others in the prosecution of his business, as well as for placing on employers an incentive to hire only careful employees." [34]

Generally, however, "an employer is not vicariously liable for an intentional tort of an employee not actuated by a purpose to serve the employer...." [35]

It is further recognized that "slander ... must necessarily be committed by an individual." [36] In *Duquesne Distributing Co. v. Greenbaum*, the Court held that "an action cannot be maintained against two for slanderous words because the words of one are not the words of the other." [37] The Court further stated that a partnership could not be held jointly liable for the slanders of a partner unless the partner was "directed or authorized to speak the words for [the partnership], or in [its] behalf or interest, or in furtherance of [its] business." [38]

The court's instructions to the jury allowed damages to be awarded solely against DAV–KY if the jury found there was a breach of contract and against Booher and DAV–KY jointly if the jury found that Booher slandered Crabb. The jury awarded Crabb $28,082.77 against DAV–KY for the breach of contract and $31,000.00 against both of the defendants for slander. The judgment embodied the

**34.** *American General Life & Accident Insurance Co. v. Hall,* 74 S.W.3d 688, 692 (Ky. 2002), *quoting Johnson v. Brewer,* 266 Ky. 314, 98 S.W.2d 889, 891 (1936).

**35.** *Id. See also,* 50 Am.Jur.2d *Libel and Slander* § 359 (1995).

**36.** *Duquesne Distributing Co. v. Greenbaum,* 135 Ky. 182, 121 S.W. 1026, 1027 (1909).

**37.** *Id.*

**38.** *Id.*

jury's verdict and awarded damages accordingly.

■ The evidence in this case supported the jury's award of damages against DAV–KY for breach of contract. But the instruction permitting the jury's award of joint damages against DAV–KY and Booher for Booher's slanderous comments was erroneous. As stated, an action for slander can only be maintained against an individual. Further, an employer cannot be held liable for torts that were committed outside of its direction or authority. There is no proof in the record that DAV–KY authorized Booher to make slanderous comments about Crabb. There is also no evidence that Booher made the comments within the course and scope of his employment. The mere fact that Booher may have been at work when he made the comments is insufficient to hold DAV–KY jointly liable.[39]

■ We are satisfied that this error also rises to the level of a palpable error that affects the substantial rights of DAV–KY. Since this issue is likely to arise on retrial, we must also reverse with regard to the award of damages on the slander claim.

### IX. Disposition.

Having considered the record on appeal, we conclude the judgment must be reversed because the circuit court's decision to deny counsel for DAV–KY and Booher the right to inspect James's notes was an abuse of discretion and because the court's instructions permitted the jury to award joint damages on the slander claim was an error of law. The case is remanded for

---

**39.** *See* 50 Am.Jur.2d *Libel and Slander* § 359 (1995) ("Testimony that the employee's statement was made while he or she was at work or on the job is insufficient as a matter of law

another trial in a manner consistent with this opinion.

ALL CONCUR.

to establish that the employee acted within the scope of his or her employment for this purpose.").