John L. WHELAN et al., Appellants,

v.

MEMORY–SWIFT HOMES, Inc., Appellee.

Court of Appeals of Kentucky.

April 25, 1958.

Rehearing Denied Sept. 12, 1958.

James R. Watts, Brandenburg, Allen P. Cubbage, Leitchfield, for appellants.

Mosa D. Sphire, Brandenburg, Howard B. Hunt, Louisville, for appellee.

BIRD, Judge.

The defendants below appeal from a judgment against them in the sum of $4,-567.12. The action arose in the following manner.

Defendants purchased a pre-cut home from plaintiff on what is generally known as a deferred payment plan. They executed and delivered their promissory note to plaintiff together with a mortgage on certain real estate as security. Defendants defaulted in payment and were sued for the entire debt according to the acceleration clause of the mortgage. The defendants pleaded divers defenses. On trial, however, the entire defense crystallized into a single plea of compromise and settlement. Defendants claimed to have paid $4,000 to plaintiff's president in full settlement, and in support of that contention introduced into evidence an instrument dated November 22, 1955, purporting to be a receipt of payment signed by him.

A printed form not designed for receipt purposes was converted to that use. On the front side, the form was designated "Dealers Statement" and on the back side, the form was designated "Borrower's Completion Authorization Certificate." These forms were used by a Pittsburg financing agent who required execution by the dealer and the purchaser-borrower before acceptance of plaintiff's negotiable paper.

The "Dealers Statement" form was used to effect the alleged receipt, the words of which were inserted on the blank lines. The words were crudely typewritten over the president's signature. The printed parts of the form were marked out by pen and ink different from that used in the signature. It is admitted that the signature is genuine, but the president testified that he had never seen the purported receipt until it was introduced in evidence. He explained his signature to the instrument by

testifying that he signed the "Dealers Statement" in blank, according to custom, and left it with the financing agent in Pittsburg, who, in turn, was to get defendants' signature to the borrower's side of the form. The president testified that the form was altered and completed fraudulently over his signature so as to constitute a receipt and release. He denied having received four thousand dollars, or any sum, in settlement. The jury, however, found for the defendant.

Plaintiff filed its motion for new trial principally upon the ground of newly discovered evidence pertaining to the purported receipt. In support of that motion the plaintiff filed the affidavit of one William Friedman, secretary of the financing agent in Pittsburg, in which it is stated that the "Dealers Statement," used as a receipt, was signed in blank and left with him as testified by the president of the company. He further stated that this signed form, still in blank, was in his office on November 22, 1955, the date appearing on the alleged receipt. He stated further that he sent the form by registered mail to the defendants on November 23, 1955, for signatures on the "Borrower's" form. He filed with his affidavit a registry receipt showing delivery of a letter to the defendant on November 25, 1955, which he claims was the same letter conveying the form in question.

The trial court in sustaining the motion for new trial spoke of the newly discovered evidence as follows:

"* * * Certainly, I do not believe plaintiff could have with reasonable diligence, discovered this very important alleged evidence at the time of the trial. Without question, this registered receipt is material and would render a different result with reasonable certainty. It is not cumulative or of an impeaching character. One of two things is certain. The receipt was in Pittsburg on the 22nd day of November, 1955, or it was in the possession of the defendant, Whelan, in Meade County. Which? If it was in Pittsburg and not in possession of defendant, Whelan, then the plaintiff is entitled to a new trial because the successful party obtained a judgment in his favor through fraud. Now, which of the parties are telling the truth? I do not know, but I do know that an important issue has been raised on the point, and one which I believe as a matter of justice should be determined once and for all time. Therefore, for the reasons thus stated, the motion for a new trial is granted and an order may be prepared accordingly, with exceptions to the defendants."

A second trial, with the new evidence in the record, resulted in a verdict for the plaintiff upon which a judgment was entered. Defendants on this appeal contend that the trial court erred in granting a new trial and they ask that the second verdict and judgment be vacated and that the first verdict and judgment be substituted therefor.

The trial court is vested with a broad discretion in granting or refusing a new trial, and this Court will not interfere unless it apears that there has been an abuse of discretion. Benberry v. Cole, Ky., 246 S.W.2d 1020; Carr v. Brownfield, Ky., 255 S.W.2d 623.

Did the trial court abuse its discretion? That is the sole question to be determined here.

The trial court's reason for granting the new trial is set out in this opinion and to us it is obvious that his conclusions were fully justified and that there has been no abuse of discretion.

The judgment is therefore affirmed.