Martin D. FISTER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2001–CA–002461–MR.

Court of Appeals of Kentucky.

July 11, 2003.

Discretionary Review Denied by Supreme Court May 12, 2004.

Milton C. Toby, Perch & Toby, Lexington, KY, for Appellant.

Albert B. Chandler III, Attorney General of Kentucky, Michael L. Harned, Assistant Attorney General, Michael L. Harned, Frankfort, KY, for Appellee.

Before SARA WALTER COMBS, McANULTY, and PAISLEY, Judges.

McANULTY, Judge.

Martin D. Fister appeals from the Circuit Court's judgment convicting him of one count of wanton endangerment in the first degree. Fister argues that the trial court's acquittal of him on two additional offenses of wanton endangerment in the first degree was inconsistent with the court's guilty verdict on the one count for the same offense when the underlying action was tried to the bench and all the charges arose from the same conduct and were supported by "virtually" identical evidence. Because we conclude that inconsistent verdicts, whether rendered by a judge or a jury, are not subject to reversal merely because they are inconsistent, we affirm.

The three charges of wanton endangerment in the first degree arose out of Fis-

ter's actions on September 30, 1998, toward three employees of Columbia Gas, Allen Kelly, Larry Brown, and Charles Combs, who were dispatched to repair an unmarked gas line ruptured by Fister's construction crew earlier in the day. Prior to the rupture, the crew had been performing site work as part of a contract awarded to Fister's company, Free Contracting, for road improvement in Scott County.

During the course of the road improvement project, Fister's company had experienced a couple of delays due to ruptured gas lines. Fister wanted Columbia Gas to accept responsibility for the delay on September 30, 1998, and became agitated when Allen Kelly refused to sign a document obligating Columbia Gas to reimburse Fister's company for any downtime that occurred due to the repair of the gas line.

After Fister's crew had been down for about two hours due to the gas line rupture, Fister decided he could not wait any longer for Brown and Combs, who were performing the actual work, to complete the repair. Fister claims that he told the Columbia gas employees to get their tools away from the line so he could fill in the hole. Then, Fister went to one of the backhoes on site and got a load of gravel, weighing at least 500 pounds. He drove the backhoe with the bucket of gravel to the vicinity of the ruptured line with the intention of covering the exposed line so his crews could return to work.

Combs had nearly completed the repair and had about five to ten minutes left of work to wrap it up. Combs was hunched over the leaking gas pipe in the hole, which was about one foot deep and a couple of feet wide, when Fister approached on the backhoe. Brown was assisting Combs and standing a little to the side of the hole. Allen Kelly was standing close to Brown and Combs and in the way of Fister's backhoe. Kelly observed Fister coming toward them and yelled at him. When Fister did not stop, Kelly screamed for Combs and Brown to move.

Combs was not aware of what Fister was doing, but he heard Allen Kelly warning him to get out of the way. Upon hearing Kelly's scream, Combs jumped back out of the hole and away from the backhoe just as Fister dumped the bucket of gravel. Some of the gravel from the load sprinkled his boots. Brown also moved back, out of the way, when he heard Allen Kelly's warning.

After Fister dumped the gravel, he told Brown and Combs to move their truck. Brown refused and took the keys out of the truck so no one else could move it. When Brown refused to move the truck, Fister instructed his site foreman to get a chain and move the truck out of the way with a bulldozer, which the foreman did.

One of the Columbia Gas supervisors called the police, who later arrested Fister on-site and charged him with wanton endangerment in the first degree. Ultimately, the Grand Jury of Scott County returned an indictment charging Fister with three counts of wanton endangerment in the first degree, one count each for Kelly, Combs and Brown.

The trial court conducted a bench trial and ultimately found Fister guilty of one count of wanton endangerment in the first degree as to the count related to Combs and acquitted him of the other two charges related to Kelly and Brown. The trial court fined Fister $5,000 and sentenced him to one-year imprisonment, which the court subsequently probated for a period of five years with Fister serving five weekends in jail.

After the court rendered its verdict on September 7, 2001, Fister filed a motion for judgment notwithstanding the verdict, for a new trial and for additional findings

of fact on September 14, 2001 (motion of September 14, 2001). The trial court denied the motion, precipitating this appeal.

Fister raises three arguments on appeal. First, Fister contends that his conviction must be reversed because the Commonwealth produced insufficient evidence at trial to support the conviction of wanton endangerment in the first degree. Second, Fister argues that the trial court violated his due process rights when it arbitrarily convicted him of one count of wanton endangerment and acquitted him on another count when the evidence to support both counts was "virtually" identical. Finally, Fister alleges that a supervisor at Columbia Gas improperly communicated with the three prosecution witnesses during the trial, which actions warrant a new trial.

As a preliminary matter, we hold that Fister failed to properly preserve for appellate review any of the three arguments set out above. We will discuss each argument in turn.

## 1. Insufficient Evidence

▆▆▆▆ The first issue on appeal is sufficiency of the evidence presented against Fister to support his conviction. Fister asserts that he preserved this argument in his motion of September 14, 2001, when he requested specific findings of fact regarding each element of the offense even though he did not specifically allege insufficient evidence. The proper method, however, for preserving this argument for our review is a motion for directed verdict alleging insufficiency of evidence at the close of the Commonwealth's case. *See Baker v. Commonwealth,* Ky., 973 S.W.2d 54, 55 (1998). Then, Fister should have renewed his motion for directed verdict at the close of all the evidence, thus allowing the trial court the opportunity to pass on the issue in light of all the evidence. *See id.*

Notwithstanding trial counsel's failure to preserve the insufficient evidence argument, Fister asks us to review the alleged error under Rule 10.26 of the Kentucky Rules of Criminal Procedure (RCr 10.26). RCr 10.26 states "[a] palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." Because we have held that insufficient evidence to support a conviction amounts to palpable error affecting the substantial due process rights of a defendant, we will consider the issue even though it was not properly preserved. *See Perkins v. Commonwealth,* Ky.App., 694 S.W.2d 721, 722 (1985).

On the merits, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)(emphasis in original). Such a standard

> gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

*Id.*

The trial court convicted Fister of one count of first degree wanton endangerment of Charles Combs. "A person is

guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." KRS 508.060(1). A defendant acts "wantonly ... when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." KRS 501.020(3).

In this case, the Commonwealth met its burden in proving each of the necessary elements of first degree wanton endangerment. The Commonwealth established that Fister was a professional engineer who was well aware of the danger in operating heavy construction machinery close to an individual like Combs who was engaged in repairing a ruptured gas line and who was not paying attention to Fister. In addition, Fister had at least 500 pounds of gravel in the bucket of the backhoe. In order to dump the gravel as Fister intended, he had to raise the bucket up, in very close proximity to Combs who was hunched over. Moreover, as Combs had not yet completed the repair to the gas line, gas was escaping and could have easily been ignited by any number of factors present on a construction work site located by a heavily traveled roadway. Finally, had the backhoe slipped or the bucket slipped or the gas ignited, Combs would have sustained serious physical injury or death.

## 2. Inconsistency of Verdicts

■ The second issue on appeal is the trial court violated Fister's due process rights when it arbitrarily convicted him of one count of wanton endangerment and acquitted him on another count when the evidence to support both counts was "virtually" identical. Fister asserts that he preserved this argument in his motion of September 14, 2001, when he requested specific findings of fact regarding each element of the offense even though he did not specifically allege that an inconsistent verdict rendered by a judge is an arbitrary exercise of power. Since this argument is essentially an argument pertaining to the sufficiency of evidence, as we will develop later, the proper method of preserving this argument for our review is a motion for directed verdict alleging insufficiency of evidence at the close of the Commonwealth's case and later renewed at the close of all the evidence. *See Baker*, 973 S.W.2d at 55.

Fister asks us to review this asserted error under RCr 10.26 even if we hold that his trial counsel did not properly preserve the issue for appeal. As we discussed in Argument 1 of this opinion, in order to reach the merits, we must determine that a palpable error exists which affects Fister's substantial rights.

Fister argues that the palpable error is the trial court's inconsistent verdict which we may review as a check against arbitrary exercises of power. In support, Fister relies on *People v. Pierce*, N.Y.App., 40 A.D.2d 581, 334 N.Y.S.2d 410 (1972), but; we do not find this case persuasive for two reasons. First, the verdict in *Pierce* was not inconsistent; it was "repugnant." *Id.* In that case, a jury convicted the defendant of the criminal sale of a dangerous drug in the fourth degree and acquitted the defendant of criminal possession of a dangerous drug with intent to sell. *See id.* Considering the elements of the two crimes, the court determined that "by no rational process could the jury acquit the defendant of the crime of criminal possession of a dangerous drug with intent to sell" and convict him for criminal sale. *Id.* In order for the jury to convict the defendant for criminal sale, they necessarily had to find the same elements required for a conviction under the criminal possession

with intent to sell charge. Second, the *Pierce* court acknowledged that "[i]t is well established that each count in an indictment is to be treated as if it were a separate indictment and consistency in the verdicts is unnecessary." *Id.* at 581, 334 N.Y.S.2d 410 (citing *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932)).

Fister is correct in asserting that Kentucky courts have not decided the issue of inconsistent verdicts rendered by a judge; however, the Kentucky Supreme Court has addressed a reviewing court's approach to inconsistent verdicts rendered by a jury. *See Commonwealth v. Harrell,* Ky., 3 S.W.3d 349, 351 (1999). Relying on *Dunn,* the court held that

> rigid adherence to a prohibition against inconsistent verdicts may interfere with the proper function of a jury, particularly with regard to lenity. Such an approach would unduly restrict the right of the jury to consider the evidence broadly and convict or acquit based upon its view of the evidence pertaining to each charge. Moreover, that approach requires analytical precision that would inevitably lead to confusion and needless appellate reversals.
> The better approach would be to examine the sufficiency of the evidence to support each verdict. This approach is consistent with the United State Supreme Court's holding that each count of an indictment should be regarded as a separate indictment, and thus consistency in a verdict is not necessary.

*Id.* (internal citations omitted).

Other courts that have addressed the question of whether an inconsistent verdict rendered by a judge is reviewable "have held that inconsistent verdicts rendered by a judge provide no greater grounds for reversal than inconsistent verdicts rendered by a jury." *United States v. Chilingirian,* 280 F.3d 704, 711 (6th Cir.2002);

see e.g., *United States v. West,* 549 F.2d 545, 553 (8th Cir.1977) (citing *Dunn* and adhering to the "general rule that consistency between the verdicts on a multiple-count indictment is unnecessary when a defendant is convicted on one or more counts but acquitted on the remainder"); *United States v. Wright,* 63 F.3d 1067, 1074 (11th Cir.1995) (holding that "inconsistent verdicts, whether provided by juries or judges, are not subject to reversal merely because they are inconsistent").

Fister relies heavily on *United States v. Maybury,* 274 F.2d 899 (2nd Cir.1960), for the proposition that an inconsistent verdict in a criminal case before a judge constitutes evidence of arbitrariness. However, since the Second Circuit issued the *Maybury* opinion in 1960, the United States Supreme Court considered the question of inconsistent verdicts rendered by a trial judge in *Harris v. Rivera,* 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981). In *Harris,* the defendant submitted a petition for a writ of habeas corpus in federal court, arguing that his guilty verdict in state court was inconsistent from his co-defendant's acquittal. *See id.* at 340, 102 S.Ct. 460. Although the Court was limited to looking for a constitutional violation in the state court proceedings, the Court acknowledged the general rule that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside" and rejected the contention that "a different rule should be applied to cases in which a judge is the factfinder." *Id.* at 345–46, 102 S.Ct. 460.

Ultimately, the *Harris* Court was not persuaded that an "apparent inconsistency in a trial judge's verdict gives rise to an inference of irregularity in his finding of guilt that is sufficiently strong to overcome the well-established presumption that the judge adhered to basic rules of procedure." *Id.* at 347, 102 S.Ct. 460. The Court went on to state that "[o]ther explanations for

an apparent inconsistency are far more likely." *Id.* One such explanation that the Court noted was the likelihood that, after observing everything that transpired in the courtroom during the trial, the judge had some doubt as to the defendant's guilt that "he might or might not be able to articulate in a convincing manner." *Id.* Indeed, that appears to be the case here. After hearing the case, the trial court had reasonable doubt as to Fister's guilt on the counts of the indictment involving Kelly and Brown, but was convinced of Fister's guilt on the count involving Combs.

In conclusion, we adhere to Kentucky's general approach that consistency of a verdict is not necessary, even in a bench trial. Instead, we shall examine the sufficiency of the evidence to support the verdict. Because we concluded in Argument 1 that there was sufficient evidence to support Fister's conviction on the one count of wanton endangerment pertaining to Combs, we hold that no palpable error exists which affects Fister's substantial rights in the mere assertion that the trial court's verdict was inconsistent.

### 3. Allegation of Improper Communications

■ The final issue on appeal is whether an allegation of improper communications between a Columbia Gas supervisor and the three prosecution witnesses during the trial warrants a new trial. Specifically, Fister alleges that Columbia Gas executive Mike Webb remained in the courtroom during the trial as an observer and attempted to influence the testimony of Kelly, Combs and Brown through a series of hand gestures and facial expressions. Fister's sister, Regina DeMoss, observed the gestures and facial expressions. In addition, the courtroom bailiff, Jim Traylor, observed some types of gestures going on between Mike Webb and the three prosecution witnesses.

Fister asserts that he preserved this argument in his motion of September 14, 2001; however, he did not bring this behavior to the trial court's attention during the trial when the trial court would have been in a position to observe the communications first-hand. Instead, Fister waited for a month and a half to advise the court of the alleged impropriety.

Nonetheless, since the trial court conducted a hearing on October 1, 2001, in response to Fister's motion on the allegation of improper communications, thus waiving the procedural bar, we reach the merits of Fister's final argument. In the hearing, the bailiff, Jim Traylor testified that he watched Mike Webb while the three Columbia Gas employees were testifying. Traylor noticed that Webb was shaking his head and nodding during their testimony, but he did not know whether this was for the purpose of communicating or not. Contrary to Fister's assertion in his brief that "Deputy Traylor testified that Webb stopped gesturing and making facial expressions when asked to do so," Deputy Traylor actually testified that he "went over to" Mike Webb, and when he did, the gestures stopped. Deputy Traylor never testified that he asked Mike Webb to stop doing anything. It seems that Deputy Traylor merely stood beside him.

Mike Webb also testified in the hearing. His testimony was that he may have been nodding or shaking his head during certain parts of the trial, but he was not trying to communicate and never intended to communicate with any of the witnesses. Webb did specifically remember shaking his head about one fact when he believed the witness's memory was incorrect, but, in shaking his head, he was not attempting to communicate with the witness. In addition, Webb described one occasion while Fister was testifying on direct examination that he attempted to get the prosecutor's

attention to relate a point concerning the "leak sheets" about which Fister was testifying.

After the hearing, the trial court issued an opinion and order finding that there was no proof that Mike Webb communicated or attempted to communicate with any of the witnesses. Moreover, the court noted that it observed people in the audience during the trial connected to Fister who were nodding and shaking their heads and who obviously had no intent to communicate with the witnesses for the purpose of altering their testimony. Accordingly, the trial court denied Fister's motion for judgment notwithstanding the verdict, motion for a new trial, and motion for additional findings of fact.

 The appropriate standards of review pertaining to the relief Fister sought in his motion of September 14, 2001, vary somewhat. When reviewing a trial court's denial of a new trial, "[t]he trial court is vested with a broad discretion in granting or refusing a new trial, and this Court will not interfere unless it appears that there has been an abuse of discretion." *Whelan v. Memory–Swift Homes, Inc.*, Ky., 315 S.W.2d 593, 594 (1958). Moreover, when reviewing a trial court's denial of a motion to alter or amend or vacate a judgment (judgment notwithstanding the verdict), we are to consider the evidence in the light most favorable to the Commonwealth and give them every reasonable inference that can be drawn from the record. *See Brewer v. Hillard*, Ky.App., 15 S.W.3d 1, 9 (1999). In addition, we are to affirm the trial court's denial of the motion "unless there is a complete absence of proof on. a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ." *Taylor v. Kennedy*, Ky.App., 700 S.W.2d 415, 416 (1985). Finally, a finding of fact by a trial judge will not be disturbed unless clearly erroneous. *See Owens–Corning Fiberglas Corp.*

*v. Golightly*, Ky., 976 S.W.2d 409, 414 (1998).

Under any standard of review set out above, we hold that Fister failed to establish any misconduct on the part of the Commonwealth, its prosecution witnesses or Mike Webb, the representative of Columbia Gas who was observing the trial. The only evidence presented at the hearing of October 1, 2001, was that Mike Webb moved his head during the trial and attempted at one point during Fister's testimony to get the prosecutor's attention. Any other conclusion that Mike Webb was attempting to "coach" or "influence" is pure conjecture unsupported by any evidence.

For the foregoing reasons, the order of the Scott Circuit Court is affirmed.

ALL CONCUR.