Mary BANKER and Bryan Cassis, Appellants

v.

UNIVERSITY OF LOUISVILLE ATHLETIC ASSOCIATION, INC., Appellee

and

University of Louisville Athletic Association, Inc., Cross–Appellant

v.

Mary Banker and Bryan Cassis, Cross–Appellees

2013–SC–000108–DG
2013–SC–000778–DG

Supreme Court of Kentucky.

RENDERED: AUGUST 20, 2015

COUNSEL FOR APPELLANT/CROSS–APPELLEE MARY BANKER: Bryan Michael Cassis.

COUNSEL FOR APPELLANT/CROSS–APPELLEE BRYAN CASSIS: Bryan Michael Cassis.

COUNSEL FOR APPELLEE/CROSS–APPELLANT: Craig Christman Dilger, Jeffrey August Calabrese, Stoll, Keenon, Ogden PLLC.

## OPINION OF THE COURT BY JUSTICE KELLER

A jury found in favor of Mary Banker on her retaliatory discharge claim against the University of Louisville Athletic Association, Inc. (ULAA), and the trial court awarded attorney fees to Banker's attorney, Bryan Cassis. ULAA filed a motion for a judgment notwithstanding the verdict or for a new trial, which the trial court denied. ULAA then appealed to the Court of Appeals, which reversed and remanded for dismissal of Banker's claim. Banker filed a motion for discretionary review and, because the Court of Appeals did not address all of the issues raised by ULAA, it filed a cross-motion for discretionary review. We granted both motions and consolidated the appeal and cross-appeal.

On appeal, Banker argues that she put forth sufficient evidence to establish that ULAA discharged her for engaging in a protected activity under the Kentucky Civil Rights Act and that the Court of Appeals substituted its view of the evidence for the jury's. In its cross-appeal, ULAA argues that the jury's award of damages and the trial court's award of an attorney fee were not supported by the evidence. Having reviewed the record and the arguments of the parties, we reverse and remand.

## I. BACKGROUND.

ULAA hired Banker to work as an assistant track and field coach in September 2007. Her job duties included recruiting and coaching multi-event athletes, *i.e.* athletes who participate in the heptathlon or decathlon. When hired, Banker signed a one year renewable contract which provided that she would be paid $37,500 per year and would be notified by April 30 if ULAA was not going to renew the contract. Furthermore, the contract provided that the Director of Athletics could terminate Banker's employment without cause upon recommendation of the head coach by giving Banker 30 days' notice.

During her tenure at the University Banker made complaints to the head coach, Ron Mann, about language used by the male coaches. In particular, she noted that those coaches referred to athletes as "pussies" and "sallys," told them they "ran like a girl," and asked them if they had a "mangina." According to Banker, Mann's response was to tell her to deal with these issues herself. Banker also complained that she was asked to perform tasks her male counterparts were not asked to do. Specifically, she was asked to make party decorations and help Mann's wife in the kitchen prior to and during a recruiting luncheon and to make cookies for the com-

pliance officers. Finally, Banker complained that she had been told to "bat her eyes and flip her hair" when seeking approval from the compliance office for recruiting visits. According to Banker, Mann was equally unresponsive to these complaints. Therefore, in February 2008, Banker complained to Senior Associate Athletic Director Julie Hermann. Hermann discussed the issues raised by Banker with the other assistant couches, after which, according to Banker, the other coaches then began acting with hostility toward her, staring at her and refusing to talk to her.

Because she did not feel her complaints were being adequately addressed by those within the athletic department, Banker complained to Malinda Durbin, the University's Affirmative Action/Sexual Harassment Officer, on April 22, 2008. Durbin discussed the issues raised by Banker with Hermann and assigned the investigation of Banker's complaints to Hermann. Following her investigation, Hermann concluded that Banker's allegations were without merit.

On May 15, 2008, Coach Mann advised Banker that her contract was not being renewed. When Banker pointed out that ULAA had not timely notified her that her contract was not being renewed, ULAA reinstated her. Pursuant to the contract, Mann then recommended to the athletic director, Tom Jurich, that Banker be discharged, which Jurich did. Banker did not perform any work for ULAA thereafter; however, ULAA paid Banker her salary and benefits through July 30, 2008.

On August 6, 2008, Banker filed suit against Jurich and ULAA asserting claims of breach of contract, breach of covenant of good faith and fair dealing, gender discrimination, retaliation, hostile work environment, wrongful discharge, and intentional infliction of emotional distress. The parties then undertook discovery and, by the time this matter went to trial in September 2010, the only claims that remained against ULAA were gender discrimination, hostile work environment, and retaliatory discharge. The only claim that remained against Jurich was retaliatory discharge.

At trial, Banker testified consistent with what is set forth above and argued that she was discharged because she complained to Durbin. For their part, ULAA and Jurich put on proof that Banker was not a good coach or recruiter, that she did not live up to expectations, and that the decision not to renew her contract had been made several days before Banker complained to Durbin.

The jury found for Jurich and for ULAA on Banker's gender discrimination and hostile work environment claims. However, the jury found for Banker on her retaliatory discharge claim against ULAA and awarded her $300,000 in damages for emotional distress and $71,875 for lost wages. Following trial, Cassis moved for attorney fees, which the court awarded, and ULAA moved alternatively for a judgment notwithstanding the verdict (JNOV) or a new trial. The trial court denied ULAA's motion.

ULAA appealed to the Court of Appeals, arguing that: the trial court erred by not granting its motion for JNOV because Banker had not met her burden of proof; the trial court should have stricken the jury's lost wages award; the trial court should have reduced or stricken the jury's award for emotional distress; and the trial court should not have awarded the amount of attorney fees it did. The Court of Appeals held that Banker had not met her burden of proof and that the trial court should have granted ULAA's motion for JNOV. Because the Court's opinion rendered the issues related to damages and

attorney fees moot, it did not address them. We set forth additional facts as necessary below.

## II. STANDARD OF REVIEW.

We review the issues raised by the parties using slightly different standards. Therefore, as we analyze each issue, we set forth the appropriate standards as necessary.

## III. ANALYSIS.

### A. Retaliatory Discharge.

As noted above, the jury found in favor of Banker on her retaliatory discharge claim, and the trial court denied ULAA's motion for JNOV or a new trial. When reviewing a trial court's denial of JNOV, "we are to affirm ... 'unless there is a *complete absence of proof on* a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ.'" *Fister v. Commonwealth*, 133 S.W.3d 480, 487 (Ky.App.2003) (quoting *Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky.App.1985)) (emphasis added). Likewise, "'[t]he trial court is vested with a broad discretion in granting or refusing a new trial, and this Court will not interfere unless it appears that there has been an abuse of discretion.'" *Id.* (quoting *Whelan v. Memory–Swift Homes, Inc.*, 315 S.W.2d 593, 594 (Ky. 1958)). "The reason appellate courts defer to the trial court's decision to grant a new trial is because the decision may depend on factors that do not readily appear in the appellate record, such as witness demeanor and observations of the jury." *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 74 (Ky. 2010). *Savage v. Three Rivers Med. Ctr.*, 390 S.W.3d 104, 111 (Ky.2012)(emphasis in original). In other words, we will not disturb the trial court's ruling on ULAA's motion unless the proof in favor of Banker is such that no reasonable juror could have found in her favor. *Bierman v. Klapheke*, 967 S.W.2d 16 (Ky.1998).

Because she pursued an unlawful retaliation claim, Banker was required:

[T]o first establish a *prima facie* case ... which consists of showing that "(1) she engaged in a protected activity, (2) she was disadvantaged by an act of her employer, and (3) there was a causal connection between the activity engaged in and the [defendant] employer's act." *Kentucky Center for the Arts v. Handley*, Ky.App., 827 S.W.2d 697, 701 (1991), citing *De Anda v. St. Joseph Hospital*, 671 F.2d 850, 856 (1982).

*Kentucky Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 134 (Ky.2003), *as modified on denial of reh'g* (Jan. 22, 2004).

There is no dispute that Banker was engaged in a protected activity when she complained to Durbin. Furthermore, there is no dispute that she was disadvantaged when Jurich discharged her. However, ULAA argues that Banker did not and could not establish the requisite causal connection between those two acts.

A causal connection can be established through either direct or circumstantial evidence. *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir.2000). 'Direct evidence is evidence, which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption.' *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001).

*Id.* at 135. Here, as in most cases, there is no direct evidence of causation. Therefore, Banker had to rely on circumstantial evidence, which is:

'[E]vidence sufficient to raise the inference that [the] protected activity was

the likely reason for the adverse action.' *Nguyen,* 229 F.3d at 565. In most cases, this requires proof that (1) the decision-maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action. *Id.*

In support of its argument, ULAA relies primarily on *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), and its progeny for the proposition that a causal connection cannot be made between a protected activity and an employer's actions if the employer was "contemplating" those actions before the protected activity occurred. In *Breeden,* nine days after Breeden filed a discrimination suit, Breeden's supervisor mentioned to the executive director of Breeden's union that she was contemplating transferring Breeden to a different position. *Id.* at 272, 121 S.Ct. 1508. Breeden, who was subsequently transferred, claimed this was evidence of the employer's retaliatory conduct. When the employer moved for summary judgment, Breeden "relie[d] wholly on the temporal proximity of the filing of her complaint ... and [the supervisor's] statement" as evidence of a causal connection. *Id.* The Supreme Court determined that Breeden's reliance solely on this temporal proximity was insufficient to create an issue of fact because it was undisputed that the supervisor did not know that Breeden had filed suit until the day after she mentioned the transfer to the union representative. *Id.* With these facts, the Court held that "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id.*

ULAA argues that the facts in this case are similar to those in *Breeden.* Mann and Hermann testified that they met on April 16, 2008, six days before Banker complained to Durbin, and decided not to renew Banker's contract. According to ULAA, Banker offered no evidence to contradict that testimony, and no reasonable jury could have believed the decision to not renew Banker's contract had been influenced or caused by Banker's post-decision complaint to Durbin. The Court of Appeals agreed; however, we do not. As set forth below, a reasonable jury could have simply found that Mann and Hermann were not credible regarding when the decision to discharge Banker was made.

Banker testified that, several days after she complained to Durbin, Hermann said, "You should've come to me with this, you shouldn't have gone to HR. I don't know how I'm going to restore trust in you amongst the staff now. I don't know how you can work downstairs anymore after this." [1] From these statements the jury could have reasonably inferred that, until Banker went to Durbin, no decision had been made regarding renewal of Banker's contract. Furthermore, the jury could have reasonably inferred that Hermann was not contemplating discharging Banker but was interested in helping Banker retain her job.

In addition to Hermann's statements, Banker introduced an email from Hermann to Durbin dated May 6, 2008, reporting on what Hermann's investigation of

---

1. Hermann denied making these statements; however, the jury was free to believe Banker and disbelieve Hermann.

Banker's allegations revealed. In that email, Hermann stated:

> Mary very much knows that her job is under review and feels she is under performing. This is true. She told me she went to HR to "cover herself." I asked her what this means and she said, she knows Ron [Mann] is disappointed in her and does not respect her work and it's made her paranoid. Throughout this process it has become clearer that Mary has struggled from the beginning to perform and out of frustration has confronted and verbally disrespected Head Coach Ron Mann repeatedly in the staff meetings out of frustration. This has caused their relationship to become very difficult and likely unrecoverable. This, combined with her lack of performance, will likely result in a non-renewal. I would recommend that Ron proceed to do so to the betterment of the program.... I had left you a couple of messages regarding proceeding to speak with Mary about her employment status. We cannot wait much longer as this should not linger to me.

As the trial court noted, Hermann refers in her email to non-renewal as "likely" and states that the relationship between Banker and Mann was "likely unrecoverable," indicating *no final determination had been* made at the April 16 meeting. Additionally, we note that the email is significant not only for what it says, but for what it does not say, *i.e.* that Hermann and Mann had already decided not to renew Banker's contract. From that omission a jury could reasonably conclude that no decision regarding renewal of Banker's contract had been made prior to Banker's meeting with Durbin.

Hermann testified she and Mann had decided not to tell Banker about the April 16, 2008, meeting so as not to jeopardize team dynamics. However, ULAA introduced evidence that: Banker was rude and confrontational to Mann; one athlete left the school, another athlete quit performing in multi-events, and a third athlete complained that Banker was the worst coach she had ever encountered; Banker had limited technical knowledge about the events she coached; Banker only recruited one multi-event athlete; and Banker had a negative impact on team dynamics. Based on that evidence, a jury could have reasonably inferred that it made no sense to delay getting rid of such a disastrous coach and, if that decision had been made, it would have been implemented sooner rather than later.

Based on the preceding, we cannot, as the Court of Appeals did, conclude that there was a complete absence of proof of causation. Thus, Banker made her *prima facie* case of retaliation. Having determined that Banker successfully proved her *prima facie* case, we proceed to analyze this case under the framework set forth in *McDonnell Douglas*.[2]

> Under this framework, after the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to show a non-retaliatory reason for the adverse employment decision that disadvantaged the plaintiff.... [T]he case then proceeds with the plaintiff having to meet her initial burden of persuading the trier of fact by a preponderance of the evidence that the defendant unlawfully retaliated against her.

*McCullough*, 123 S.W.3d at 134. In other words, the plaintiff must prove that the reasons given by the defendant were pretextual. *Id.*

ULAA produced a significant amount of evidence that Banker was not a good

---

2. *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

coach, that she did not do her job with regard to recruiting, and that she was a disruptive influence. However, we do not agree with ULAA that Banker put forth nothing to refute this evidence. Banker testified that she had been a successful coach and athlete; that ULAA had recruited her; that she had successfully recruited at least one multi-event athlete; and that what ULAA deemed as disruptive behavior was simply her attempt to improve the program. This evidence, along with that previously set forth above regarding causation, was sufficient to support a reasonable inference that ULAA's stated reasons for discharging Banker were pretextual.

Because we believe that the Court of Appeals injected its interpretation of the facts and did not view the proof in the light most favorable to Banker, we reverse. We next address the issues raised by ULAA in its cross-appeal.

## B. Emotional Distress Damages.

In support of her claim of emotional distress damages, Banker testified that she suffered significant stress with accompanying loss of appetite, weight loss, depression, and sleep disturbance. Banker testified that she had not sought any treatment for her symptoms because she lost her health insurance and could not afford her COBRA payments. In addition to her own testimony, Banker offered testimony from her mother that Banker seemed stressed and lost weight during her time at the University and that Banker was devastated when she lost her job. ULAA argues that this testimony, while it may have supported an award of damages for emotional distress, was not sufficient to support an award of $300,000.

■ As with the retaliatory discharge issue, the standard of review regarding the amount of damages awarded is whether the trial court abused its discretion when it denied ULAA's motion for JNOV. *Childers Oil Co. v. Adkins,* 256 S.W.3d 19, 28 (Ky. 2008).

> However, our usual standard of review must be undertaken with an additional consideration: "The amount of damages is a dispute left to the sound discretion of the jury, and its determination should not be set aside merely because we would have reached a different conclusion. If the verdict bears any relationship to the evidence of loss suffered, it is the duty of the trial court and this Court not to disturb the jury's assessment of damages." *Childers Oil Co., Inc.,* 256 S.W.3d at 28 (quoting *Hazelwood v. Beauchamp,* 766 S.W.2d 439, 440 (Ky. App.1989)). "That is to say, we necessarily approach such questions with great caution." *Emberton v. GMRI, Inc.,* 299 S.W.3d 565, 579 (Ky.2009).

*Savage,* 390 S.W.3d at 120 (Ky.2012).

■ The trial court, which was in a position to observe the witnesses and the jury, found that:

> During the trial [Banker] testified that she lost weight, was embarrassed, felt depressed, and was under extreme stress. Consistent with this testimony, [Banker's] mother testified about how important coaching was to [Banker] and, accordingly, how "devastating" termination was. Having considered the facts surrounding [Banker's] termination, it was reasonable for the jury to conclude that [Banker] did indeed suffer from a profound mental and emotional distress. In addition to the embarrassment of being fired for no good cause, [Banker] had good reason to worry that termination represented a severe setback on her career track. The verdict bears a relationship to the evidence of loss suffered, and the Court will not disturb the jury's findings.

We agree with the trial court. Banker and her mother testified that Banker suffered significant emotional distress both before and after her wrongful discharge. And, while we might not have awarded the amount this jury did, we cannot say that the damage award bore no relationship to the evidence of loss. Thus, we hold that the trial court did not abuse its discretion by refusing to alter the jury's finding. .

We note that ULAA cites only one case, *Flowitt v. Ashland Hosp. Corp.*, 2007 WL 1519392 (Ky.App.2007), wherein the jury's award of emotional distress damages was set aside.[3] In *Flowitt*, a physician brought discrimination and contract claims against Ashland Hospital Corporation. *Id.* at *5. The jury awarded Flowitt $500,000 in emotional distress damages. *Id.* at *6. The Court of Appeals affirmed the trial court's JNOV on Flowitt's discrimination claims, then vacated the jury's emotional distress damage award. *Id.* at *8–9. ULAA implies that the Court did so because the award was excessive; however, that is not the case. The Court held that, because Flowitt's only viable claim was her contract claim, she could not as a matter of law receive emotional distress damages. *Id.* In *dicta*, the Court then held that, even if available, Flowitt would not have been entitled to emotional distress damages because she did not prove that any emotional distress was related to the breach of contract claim. As the Court noted, the evidence established that Flowitt's emotional distress was either related to familial difficulties or to lawful actions taken by the hospital. *Id.* at *10. Thus, the Court did not, as ULAA implies, find that the amount of damages was excessive, it found that there was no evidence relating those damages to Flowitt's only viable claim.

For the foregoing reasons, we affirm the trial court's denial of ULAA's motion for JNOV as to the award of emotional distress damages.

## C. Lost Wages.

The jury awarded Banker $71,875 in lost wages. ULAA argues that the trial court erred in not setting aside that award because Banker did not present evidence that she had attempted to mitigate her damages. As set forth above, we review the trial court's denial of ULAA's motion for JNOV for an abuse of discretion. *Savage*, 390 S.W.3d at 111.

Following termination, a retaliatory discharge claimant is required to exercise "reasonable diligence to secure other comparable work . . . [and] must [be] ready, willing and available for employment substantially equivalent to the position [she] lost." *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 918 (Ky. Ct. App.2006) (citations omitted). In reviewing an argument that a claimant did not mitigate her damages, "our only inquiry is whether appellant presented sufficient evidence that [she] exercised reasonable diligence to secure other work during the period for which damages were awarded." *Lewis v. Bledsoe Surface Min. Co.*, 798 S.W.2d 459, 461 (Ky.1990) (citations omitted).

In denying ULAA's motion for JNOV, the trial court found that:

> [Banker] testified that after her termination she sought other employment, but felt it was futile given the hiring season for assistant track and field coaches. When reviewing the proof as a whole, it was reasonable for the jury to infer that the termination, coupled with the pending law suit, acted as a virtual

3. ULAA did not follow Kentucky Rule of Civil Procedure (CR) 76.28(5) by tendering a copy of the decision with its brief; nonetheless, we address why *Flowitt* is not applicable.

scarlet letter, precluding Ms. Banker's employment as a collegiate coach.

We reviewed Banker's testimony, and she made three statements about potential post-discharge employment. She testified that Mann told her that he knew of an assistant coaching job at Notre Dame and that he would make a call on Banker's behalf; and she made reference to a potential coaching job at the University of Alabama Birmingham. However, she did not state whether she pursued either coaching job. Banker also testified that, because of the late notice of non-renewal, other coaching jobs had "already been applied for" and she "did not look for work." Thus, the trial court's statement that Banker looked for employment is not supported by the record. Because Banker did not put forth any proof that she looked for work after being discharged, we must remand to the trial court with instructions to strike the award for lost wages from the judgment.

### D. Attorney Fees.

KRS 344.450 provides that:

Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the law suit. The court's order or judgment shall include a reasonable fee for the plaintiff's attorney of record and any other remedies contained in this chapter.

■■ When calculating attorney fees pursuant to KRS 344.450, the court is to first determine what the "lodestar" amount is, *i.e.* the total number of hours worked multiplied by the appropriate hourly rate. The court can then adjust that lodestar amount upward or downward "for various special factors in the litigation." *Meyers v.*

*Chapman Printing, Co., Inc.,* 840 S.W.2d 814, 826 (Ky. 1992). We review a trial court's award of attorney fees for abuse of discretion. *Id.*

■■ Pursuant to KRS 344.450, Banker filed a motion for an attorney fee of $186,656.25, based on an hourly rate of $275 and 678.75 hours of work. In support of her motion, Banker attached 27 pages of time records from Cassis dating from June 1, 2008 through October 4, 2010. Cassis stated that the records were contemporaneously recorded and the result of meticulous documentation of "all time spent working on this case and the time entries [were] date and time-specific down to .25 hourly increments." ULAA moved for leave to take discovery on the issue of Banker's attorney fee motion, arguing that the records attached to Banker's motion were not the contemporaneous records. At a hearing on the fee motion, Cassis indicated that the records he had produced were the records he had. He also stated that he had taken the case on a contingent fee basis; had made an open records request regarding ULAA's fees; and had determined that ULAA's attorneys had billed approximately 1,300 hours defending Banker's claims, with a total amount charged similar to his request. The court then granted ULAA's discovery motion, limiting it to requests for production of documents and a deposition on written questions.

In response to ULAA's requests for documents, Cassis provided "draft time entries" that appear to include all of his time records from January 1, 2008 through November 14, 2009. We note that these records are approximately two inches thick.

After receiving Cassis's response to the request for production, ULAA filed its response to the motion for attorney fees. In that response, ULAA stated that it com-

pared the draft time records to the time records Cassis had attached to the fee motion and found: differences in the language used in the descriptions of the work performed; differences in the time entries, with the final version containing "padded" hours; hours and descriptions in the final version that did not appear in the draft version; multiple days when Cassis billed 20 or more hours; and "inflated" time because of Cassis's practice of billing in quarter hour rather than tenth of an hour increments. Based on its review of Cassis's records, ULAA asked the court to reduce the number of billable hours to 339.375 or half of the number of hours requested by Cassis. Cassis did not file a reply.

The trial court reviewed Banker's motion and ULAA's response and awarded Cassis a fee of $149,325. The court arrived at this fee by reducing the hourly rate from the $275 requested by Cassis to $220, with no change in the number of hours worked. As to the hourly rate, the court noted that Cassis had undertaken a risky case on a contingent fee basis against a popular defendant. According to the court, an hourly rate of $220 would be "sufficiently high enough to entice capable counsel to take [Kentucky Civil Rights Act] cases .... and ... reasonable in light of Mr. Cassis' [sic] efforts."

The court then found that the number of hours claimed was "reasonable in light of the contentiousness of the litigation, which included the following: lengthy dispositive motions, multiple discovery disputes, numerous depositions, hearings, client counseling, mediation, a week[-]long trial, post-trial motions, post-trial discovery disputes, and this contentious dispute over attorney

fees." In doing so, the court stated that it did not know how many hours defense counsel had billed[4] but that having that information "would be helpful, nay, necessary, to know how many hours [ULAA] considered necessary to defend against [Banker's] claims." The court then stated that, rather than focusing on such matters, it would "focus on whether Mr. Cassis' [sic] tabulation [of hours] is reasonable in light of the litigation." The court concluded that it was and noted that the number of hours did not include the time that Cassis had spent litigating the attorney fee issue.

▪ Finally, the court found that no adjustment in the lodestar amount was appropriate. In denying ULAA's request for a downward adjustment, the court determined that, although Banker succeeded on only one of her claims, the "vast majority of the facts relevant to the winning retaliation claim were also relevant to [Banker's] other claims." As to Banker's request for an upward adjustment, the court found the risks cited by Cassis were similar to the risks routinely undertaken by attorneys working on a contingent fee basis. Furthermore, the court noted that the lodestar amount was nearly equal to the 40% routinely taken by attorneys undertaking risky cases on a contingent fee basis.

ULAA argues that the trial court erred for four reasons: (1) it "failed to consider in any way ULAA's documentation, and simply accepted [Cassis's] representations at face value without scrutinizing the requisite proof;" (2) it "found that ULAA could not contest Banker's counsel's fee claim without disclosing its own counsel's hours;" (3) it looked to what a reasonable

---

4. As we noted, Cassis stated at the hearing on his fee motion that defense counsel had billed ULAA for approximately 1300 hours of work. However, Cassis did not file any documentation regarding those bills, which is apparently why the court indicated that it did not have any information regarding the number of hours defense counsel billed.

contingent fee would have been; and (4) it refused to adjust the fee based on the dismissal of the majority of Banker's claims. We address each argument in turn.

First, we note that the trial court did consider ULAA's documentation, referring specifically to that documentation in its order. Furthermore, the trial court undertook an analysis of the "true effort to place value on the services rendered" as required by *Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 429 (Ky.2010), noting the contentiousness of the litigation, including the postverdict motion practice. Therefore, this argument is not persuasive.

ULAA's second argument fails because it is simply a misstatement of what occurred. ULAA complains that the trial court "found ULAA could not contest Banker's counsel's fee without disclosing its own counsel's hours." The trial court did state that it might consider ordering ULAA to provide that information; however, the court never did so. Furthermore, although the trial court stated in its order that having such information would be "helpful, nay necessary," the court went on to state that making a comparison between ULAA's and Banker's counsels' billing records "would produce even more billable hours for both Parties." Instead, the court chose to "focus on whether Mr. Cassis' [sic] tabulation is reasonable in light of the litigation" which is what is required under *Hill.* Therefore, this argument is without merit.

ULAA's third argument is somewhat confusing. The trial court did, as ULAA notes, look to what a reasonable contingent fee would be in this situation. However, the court did not do so to determine the lodestar amount or to deny ULAA's request for a downward adjustment. It did so as justification for denying Cassis's request for an upward amendment in the

lodestar amount, which benefitted ULAA. We are not certain why ULAA is arguing that a decision from which it benefitted was incorrect; however, regardless of ULAA's reasons for making this argument, it is not persuasive.

ULAA does not cite any case law to support its fourth argument, that the court should have amended the lodestar amount downward based on Banker's failure to prove the majority of her claims. However, as the trial court held, "the vast majority of the facts relevant to the winning retaliation claim were also relevant to the other claims." Because these claims were "inexorably intertwined" it was not an abuse of discretion to deny ULAA's motion to amend the lodestar calculation downward. *See Hill*, 327 S.W.3d at 429. Therefore, this argument is equally unpersuasive.

Finally, we note that Cassis, who was and apparently still is a solo practitioner, has been involved in this litigation for nearly seven years. Approximately five of those years have been spent litigating his entitlement to a fee and arguing issues on appeal. Considering the length and the contentiousness of this litigation, we discern no abuse of discretion nor anything unreasonable about the fee the trial court awarded. Therefore, we affirm the trial court's denial of ULAA's motion for JNOV on the attorney fee issue.

## IV. CONCLUSION.

For the foregoing reasons, we reverse the Court of Appeals and remand this matter to the trial court for entry of a judgment striking the award for lost wages.

All sitting. All concur.