RENDERED:  JULY 26, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0675-MR

BROOKE WITTE                                                         APPELLANT


APPEAL FROM KENTON CIRCUIT COURT
v.          HONORABLE KATHLEEN S. LAPE, JUDGE
ACTION NO. 22-CR-01241


COMMONWEALTH OF KENTUCKY                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; COMBS AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Brooke Witte appeals her convictions in the Kenton Circuit Court for promoting contraband in the first degree and tampering with physical evidence, both Class D felonies.  We affirm.

For reasons that are unclear from the record before us, Brooke Witte became an inmate at the Kenton County Detention Center ("KCDC") on October 22, 2022.  After spending the night in a holding cell in the booking area, Witte was called to "dress out" (*i.e.*, remove her street clothes and don a KCDC uniform) by

Deputy Sabrina Williams. Deputy Williams testified that, during dress out, Witte refused to take off her bra and struggled with the garment, and Deputy Williams became suspicious. When Witte was instructed to put on the KCDC-approved shirt, she continued to struggle and attempted to hold her hands close to her chest. When Witte was attempting to put on the shirt, Deputy Williams observed two small baggies fall out of Witte's bra. One was empty, but the other contained what was later determined by laboratory analysis to be methamphetamine. Deputy Williams called her supervisor, who instructed her to perform a body scan on Witte. The two baggies were confiscated and taken to KCDC's evidence room.

The body scan performed on Witte revealed an "abnormality" in her vaginal area. Deputy Williams was instructed to perform a full strip search on Witte at that point. Deputy Williams' body camera footage showed her leading Witte to an empty room. From there, the actions of Witte and Deputy Williams move very quickly. After removing her sanitary napkin in front of Deputy Williams, Witte continued to touch and/or grab at her vaginal area. Deputy Williams yelled at her to stop, and Witte stated she did not understand what Deputy Williams was asking of her. Deputy Williams then leaned backwards to yell out the door for a sergeant, and Witte was momentarily out of view of the body camera. Just a second or two later, when Deputy Williams leaned back into the room, the footage shows Witte with her back to the camera, hunched over, and

grabbing at her vaginal area. Deputy Williams then grabbed Witte and yelled at her to "Take it out of your mouth!" Witte, who had been talking nonstop up to that point, responded only with grunts. Deputy Williams and Witte struggled momentarily until Witte yelled at Deputy Williams to stop hurting her. Deputy Williams was holding one of Witte's arms while Witte attempted to reach behind her with the other hand. Although the video is fast-moving and chaotic, Deputy Williams testified she did see Witte pull "something" from her vagina and put it in her mouth.

Witte was placed in a "dry cell" for three to four days. Deputy Williams testified that a dry cell has no running water so that inmates suspected of ingesting contraband cannot flush feces or vomit down the toilet. KCDC guards checked on Witte every 15 to 20 minutes; however, no contraband was ever recovered from Witte's person or the dry cell. It was unclear from the evidence presented at trial if another body scan was ever performed on Witte.

Witte testified in her own defense at trial. Her version of events was vastly different from Deputy Williams' testimony. Witte testified that she spent the night in the holding cell in the booking area and, when called to dress out by Deputy Williams, she began to gather her belongings. Witte claims it was at that time she discovered a small baggie of what she believed to be drugs in the holding cell. Witte testified she wanted to give the bag to KCDC staff "because it's the

right thing to do." She testified that she had the baggie in her possession for less than one minute before handing it to Deputy Williams. She claimed Deputy Williams became angry and accused her of possessing the drugs. Witte testified she had no idea where the drugs came from, but they were not hers, and neither Deputy Williams or any other KCDC staff member found drugs on her person at any point. Witte denied putting anything into or removing anything from her vaginal area or mouth in the body camera footage and stated her behavior was because she was confused and did not know what she was supposed to do.

At trial, Witte moved for a directed verdict on both counts at the conclusion of the Commonwealth's case in chief and again after the close of all evidence. The trial court denied the motions. The jury found Witte guilty on both counts. The trial court imposed the jury's recommended sentence of one-year's imprisonment for each offense, to run consecutively, for a total of two years of incarceration. This appeal followed.

Witte argues the trial court should have granted her motion for directed verdict. The standard for a directed verdict is outlined in *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991):

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on

the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

An appellate Court is "to affirm . . . unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ." *Fister v. Commonwealth*, 133 S.W.3d 480, 487 (Ky. App. 2003) (citations omitted).

We first address the conviction for promoting contraband. Kentucky Revised Statutes (KRS) 520.050 provides, in relevant part,

(1) A person is guilty of promoting contraband in the first degree when:

(a) He knowingly introduces dangerous contraband into a detention facility or a penitentiary; or

(b) Being a person confined in a detention facility or a penitentiary, he knowingly makes, obtains, or possesses dangerous contraband.[1]

---

[1] "Dangerous contraband" is defined in KRS 520.010(3) and includes "any controlled substance."

The jury was faced with an issue of credibility. Either they believed Deputy Williams' version of events that she observed the baggie of methamphetamine and an empty baggie fall out of Witte's bra during dress out; or Witte's version of events that she found a single baggie containing what she only thought *might* be drugs in the holding cell and immediately turned it over to Deputy Williams. The jury clearly believed Deputy Williams. As a reviewing Court, we do not make determinations regarding credibility or weight of the evidence. *Benham*, 816 S.W.2d at 187. The trial court was correct to deny Witte's motion for directed verdict.

We next turn to the tampering with evidence conviction. KRS 524.100 provides, in relevant part,

> (1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:
>
>> (a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding[.]

Notably, if evidence is "destroyed" it cannot be produced for trial. The fact that KCDC staff did not find evidence easily visible in Witte's feces or vomit in the dry cell does not mean it was never there. Deputy Williams' testimony of the events during dress out and when she attempted to do a full body

search of Witte, combined with the body camera footage, and the fact that one baggie of methamphetamine was found along with an empty baggie, could lead a reasonable juror to conclude that Witte tampered with evidence in this case. Again, we emphasize that "[c]redibility and weight of the evidence are matters within the exclusive province of the jury." *Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky. 1999) (citation omitted). Considering the evidence as a whole, it was not clearly unreasonable for the jury to find Witte guilty of tampering with physical evidence. *See Benham*, 816 S.W.2d at 187.

Accordingly, for the foregoing reasons, the judgment of the Kenton Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robert C. Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Thomas A. Van de Rostyne
Assistant Attorney General
Frankfort, Kentucky